# THE OHIO AND MISSISSIPPI RAILROAD COMPANY
## *v.*
## WILLIAM SCHIEBE.

1. RAILROAD — *negligence.* Where a passenger on a railroad attempts to pass from a train in motion, and not at a station, and is warned not to get off at that place, and the conductor takes hold of him to prevent him from passing from the car, — *held*, that the passenger is guilty of negligence if he passes from the train, and receives injury thereby.

2. SAME. It is not negligence to run a passenger train on the side track, where it is necessary to permit a freight train too long to run into the side track, to pass, when the evidence shows that such a course was not unusual.

3. VERDICT — *against the weight of evidence.* Where a verdict is manifestly against the weight of evidence, the court should on motion set it aside and grant a new trial, and failing to do so, this court will reverse for error.

WRIT OF ERROR to the Circuit Court of St. Clair county ; the Hon. JOSEPH GILLESPIE, Judge, presiding.

William Schiebe brought an action on the case in the St. Clair Circuit Court, against the Ohio and Mississippi Railroad company, to the March Term, 1867.

The declaration contains three counts. The first avers that plaintiff became a passenger on a train of defendant, to be carried from Illinoistown to Lebanon ; that, in alighting from the cars with due care, defendant's servants negligently caused the train to be suddenly moved backward, whereby plaintiff was violently thrown to the ground, and his right arm broken.

The second is substantially the same as the first, except it avers that the plaintiff was thrown in the same manner from the train, and its wheels ran over and crushed his right arm.

The third count avers, that defendants ran their passenger train into a side track at the Lebanon station, and, while plaintiff, with due care, was attempting to alight therefrom, defendant's servants carelessly drove the train violently and suddenly backward, whereby plaintiff was thrown to the ground and his right arm cut off. Defendant filed the plea of the general issue.

A trial was had at the return term before the court and a jury; evidence was introduced by both parties, so much of which as is necessary to a proper understanding of the case appears in the opinion of the court. The jury returned a verdict in favor of the plaintiff, for $3,000.

Defendant entered a motion for a new trial, because the verdict was against the weight of evidence, which the court overruled, and rendered judgment on the verdict. Defendant thereupon prosecuted this writ of error, and urges a reversal, because the court overruled the motion for a new trial.

Mr. H. P. Buxton, for the appellant.

Mr. Joseph B. Underwood, for the appellee.

Mr. Justice Walker delivered the opinion of the Court:

This was an action on the case brought by appellee, in the St. Clair Circuit Court, against appellants, for negligence in operating their trains, whereby he was injured. It appears that appellee became a passenger at Illinoistown for Lebanon, on a passenger train of appellants. That, on arriving at Lebanon, a freight train, being too long for the side-track, had stopped on the main track, and the passenger train, having slackened up, moved upon the side-track to permit the freight train to pass. As the passenger train started, appellee attempted to get off, and in doing so, fell, and one of his arms was crushed, and was afterward amputated. He insists that the injury was produced by the carelessness of the employees of the company, while they contend that it arose from his own want of care and prudence.

Appellee swears, that, after the train had stopped and was starting again, some one said the train was going to Summerfield, which was the next station. That he thereupon took his baggage and went out upon the platform, and just at that time "the locomotive gave a push backward, and I fell down by the wheels, and the locomotive then went backward and the wheel went over my right arm," and the doctor amputated it. "The

locomotive came back with great force." "I think a man and his wife got out before me safely; it was forty or fifty yards from the station where I was hurt; I cannot tell whether Lebanon was announced or not; I did not hear it; I did not see any thing of the conductor, or any brakeman when I went to the door of the car, and no one told me not to get out." He says the night was very dark, and in this he is supported by other testimony.

Two witnesses, besides the conductor, testified that the conductor told him not to get off there; that it was not the station. They say they heard the warning. They were just behind him and had started to pass from the car. They say this occurred at the door of the car, and as the conductor met appellee on the platform in coming from the next car. Another passenger in the same car testifies, that, as the crowd started to go out, he heard some one at the door say, "We have not got to the station yet;" that it was about the time appellee was hurt. He says he does not know who it was that gave the warning; that he was about the middle of the car.

The conductor testified, that, as he came out of one car to the platform, appellee was coming out of the opposite car with some bundles in his hands; that witness said to him, "Do not get off here; we are not at the station;" but appellee walked along and stepped down on the steps of the car, and that he (witness) took hold of his shoulder and said, "Don't get off here;" but appellee was too heavy for him to hold, in the position which witness then occupied, and he fell. There seems to be no other witness than appellee who testified that there was a violent jerking by the train at the time the accident occurred. Some of the witnesses gave it as their opinion that appellee was under the influence of liquor at the time; but this he denied, and said he had only drunk one glass of beer that day, and that was in the morning.

If the testimony given by appellee was alone considered, the jury might have been warranted in the conclusion at which they arrived; but his testimony is overcome by the testimony of at least four witnesses as to the warning given, "That they

had not reached the station;" and three of them state positively that he was directed by the conductor, not to pass from the cars at that place. These witnesses, so far as we can see from this record, stand unimpeached, and are entitled to credit. This evidence may, no doubt, be reconciled. Appellee may have been so fully possessed with the idea of getting from the cars, and thus avoid being taken to the next station, that he failed to give ordinary attention to what was said and done at the time. If his mind was greatly preoccupied with such an apprehension, and he was not giving his attention to what others were doing, he might and probably would not hear the warning or directions given by the conductor. The others, however, seem to have been giving proper attention, and state positively that the warning was given, and that they heard it distinctly.

Appellee states that the conductor did not take hold of him, while the latter states that he did, and is fully supported in the statement of Ellen Macken. We are wholly unable to comprehend how so many witnesses could be mistaken as to what they saw and heard. On the other hand, appellee may have been, and no doubt was, badly stunned by the fall, and would be less likely to recall the circumstances, than others not subjected to such a peril. It is more than probable that the conductor took hold of him while he was in the act of falling, and if so, it was natural for appellee to have been entirely occupied with his situation, and the apprehension of its results; under such circumstances it would be remarkable if his attention was attracted to the fact that the conductor had hold of him, or, if noticed at the instant, that he could recall it to memory. The evidence, we think, preponderates largely in favor of the occurrence as detailed by appellants' witnesses.

This case proceeds upon the ground of negligence on the part of appellants. But, when we consider the circumstances, we are unable to see that they have been derelict in any duty. Appellee says he did not hear the name of the station announced, and it was, we presume, not done, as the train had not reached the station. He either failed for want of attention to hear the

emphatic warning of the conductor, or he failed to regard it. Nor was there any negligence shown in running the train on the side track, to permit the freight train to pass on the main track. The evidence shows that such a course was not unusual, and in this instance it was necessary. And the weight of evidence is, that there was no violent jerking of the train; but if there had been, it was not negligence, as the train had not reached the platform where passengers were expected to get off. Appellee was attempting to pass from the train while in motion, and at an unusual place. If there was negligence it was on the part of appellee.

The judgment of the court below is reversed and the cause remanded.

*Judgment reversed.*