54 610
77 18
54 610
86 236
86 491
54 610
88 61
·54 610
91 155
54 610
93 428
54 610·
94 183
54 610
97 286
54 610
100 680
54 610
104 313
54 610
112 s 54
54 610
j113 ¹375

JEWELL vs. THE CHICAGO, ST. PAUL & MINNEAPOLIS RAILWAY COMPANY.

*March 16 — April 5, 1882.*

RAILROADS: CONTRIBUTORY NEGLIGENCE: COURT AND JURY. *(1) What constitutes contributory negligence: Its effect. (2) When question of contributory negligence for the court. (3) Submitting questions for special verdict.*

1. One who passed out of a railway car and got upon the platform thereof, and attempted to step or jump from the car, while it was in motion, cannot recover for injuries suffered in consequence thereof, even though he had reached his place of destination, and the train, which had previously stopped to permit passengers to alight, had not so stopped for a reasonable *length of time.*

2. Upon the admitted facts and those shown by undisputed evidence in this case, this court holds that the court below erred in not setting aside special findings of the jury to the effect that the plaintiff was not guilty of contributory negligence, and granting a new trial, though there was also a general verdict in plaintiff's favor.

3. Each question submitted to a jury for a special verdict should be limited to a single, direct and controverted issue of fact, and should be so stated that the answer will necessarily be positive, direct and intelligible.

APPEAL from the Circuit Court for *St. Croix* County.

About October 1, 1879, the plaintiff, who was then a milliner and dressmaker, about fifty-two or fifty-three years of age, residing at the village of Hammond, a station on the defendant's railway between St. Paul and Elroy, traveled as a passenger on one of the defendant's passenger trains from St. Paul to Hammond. The train reached Hammond at about half past ten o'clock in the evening; and the complaint alleges that while the plaintiff was getting off of the train at the station, "the defendant so carelessly, negligently and unskillfully managed the train, by starting up said train before she could get off onto the platform at said station, that she was violently thrown down," etc.; and for a second cause of action, that "the defendant so carelessly, negligently and unskillfully

managed said train with reference to the platform built, occupied and used at said station for passengers getting off from said train, that the plaintiff, in getting off, was violently thrown down upon said platform," etc. The answer denied the negligence of the company, and alleged contributory negligence on the plaintiff's part. The evidence given on the trial sufficiently appears from the opinion. The jury returned a special verdict upon questions submitted to them by the court, the material parts of which are as follows:

1. Was the defendant's train upon which the plaintiff was a passenger on the evening when the injuries were received by the plaintiff, stopped at the platform in the first instance a sufficient length of time to enable the plaintiff, in the exercise of due diligence, to have safely alighted therefrom? *Answer.* No.

2. Did said train stop twice before the plaintiff left the platform? *Answer.* Yes.

3. Was the plaintiff, while standing upon the steps of the car platform, thrown therefrom by the sudden starting of the train? *Answer.* Yes.

4. Did the plaintiff voluntarily step or jump from the cars onto the platform? *Answer.* No.

6. Was the plaintiff warned by the brakeman and by bystanders not to step off the cars while in motion? *Answer.* Yes.

7. Was the plaintiff, in her efforts to alight from the car in question, guilty of any want of ordinary care that materially contributed to the injury complained of? *Answer.* No.

8. Were the defendant's agents guilty of negligence either in not stopping long enough to allow the plaintiff to alight from the train, or in suddenly starting the train after the plaintiff came upon the platform on her way from the car to the depot platform? *Answer.* Yes.

9. If you answer yes to the last question, then did the plaintiff's injury result from such negligence without any

contributory negligence on the part of the plaintiff? *Answer.* Yes.

12. Did the plaintiff believe that, at the time the cars stopped the second time, they stopped for the purpose of allowing her to get off the cars? *Answer.* Yes.

13. Did the plaintiff attempt to leave the car while the train was in motion, either by stepping down the steps of the car platform or by jumping therefrom after having been warned not to do so, and notwithstanding the efforts of bystanders to physically prevent her from so doing? *Answer.* No.

There was also a general verdict for the plaintiff. The question of damages was, by stipulation, taken from the consideration of this court. From a judgment on the verdict in favor of the plaintiff, the defendant appealed.

*William E. Carter*, for the appellant.

For the respondent there was a brief by *L. P. Wetherby* and *N. H. Clapp*, her attorneys, with *R. M. Bashford*, of counsel.

CASSODAY, J. For the purposes of this appeal, we assume that there is evidence sufficient to justify the jury in finding that the train did not stop in the first instance for a sufficient length of time to enable the plaintiff, in the exercise of due diligence, to get off the train with safety; notwithstanding the undisputed occurrences during the stoppage, as detailed by the plaintiff's own witnesses, would seem to demonstrate that a sufficient time did elapse while the train was at rest to enable the plaintiff to get off. Does the undisputed evidence show that the plaintiff was guilty of contributory negligence? The undisputed evidence shows that the train started the first time just before the plaintiff passed out of the car in which she was riding, onto the front platform of the same, and that she so passed out while the train was in motion.

It also appears, from evidence which amounts to a demon-

stration, and which is not disputed by any direct testimony, but merely by certain inferences to be drawn from some statements of the plaintiff, and perhaps one or two of the other witnesses, that when the train stopped the second time the door of the baggage car had not passed the east end of the depot platform, and that the conductor, Pemberthy and his sister, were there near where the plaintiff subsequently fell onto the depot platform, and while there the train started the second time. That this is so seems to be overwhelmingly demonstrated by all the facts and occurrences detailed in the evidence. This being established, and the fact being evident of there being a smoking car between the baggage car and the ladies' car, it conclusively follows that, after the train started the second time, the plaintiff, on the front end of the ladies' car, moved eastward at least half the length of the baggage car and the length of the smoking car, with the intervening spaces, before she reached the place where she struck the depot platform. Even had there been no smoking car, as some seemed to think, yet, as the door of the baggage car was at the point named when the car started the second time, the plaintiff must thereafter have moved eastward upon the platform and steps of the ladies' car at least half the length of the baggage car and the intervening space between that and the next car, before she reached the place where she struck the depot platform.

It is very certain, from Pemberthy's evidence, that when, after leaving the conductor and on his way to the west end of the depot, he saw the plaintiff standing on the front platform of the ladies' car, the train was moving after having started the second time. The plaintiff's theory is, that, after the conductor had stopped the train to get Pemberthy's trunk, and while it was standing still, and while she was in the act of passing from the steps at the front end of the ladies' car onto the depot platform, the train suddenly started, and that she was thereby thrown onto the depot platform by the jerk. Had

this been so, she would necessarily have fallen many feet west of where she actually did fall; for, at the very instant when the train so started the second time, and when she claims she was so jerked off, the conductor and Pemberthy were on the east end of the depot platform, nearly opposite the door of the baggage car, and at or near the very spot where all agree she subsequently landed upon the depot platform. Another difficulty with the plaintiff's theory is, that had she been thrown from the steps of the car platform by the sudden starting of the train, and without any voluntary step or jump from the car onto the depot platform, as found by the jury, then she would necessarily have been thrown lengthwise of or by the side of the train, and not laterally onto the depot platform, as she was thrown. Can we say there is evidence, *not in conflict with the admitted facts*, tending to prove the plaintiff's theory, and sufficient to sustain a verdict to that effect?

The plaintiff concedes that she was attempting to get from the car steps onto the depot platform at the instant she claims she was jerked off; so the fact of her being in the act of voluntarily stepping from the car onto the depot platform is confessed, notwithstanding the special finding of the jury to the contrary, the only dispute being whether such voluntary stepping took place while the train was at rest or in motion. The plaintiff testified, in effect, that the man who assisted her and went out of the car ahead of her, told her not to attempt to get off the train while it was in motion, but that no one else was present or said anything to her about it. The jury, on the contrary, found that the brakeman and bystanders warned her not to get off while the cars were in motion. She concedes, in effect, that she did attempt to go down the steps, and got onto the first step, and she don't know but she got onto the second step, and that the man who assisted her was below her on the step; that she was anxious to get off the car, but was not much excited until she had stepped down onto the first step, and the train started up, when she became afraid she

would be thrown off, and then tried to hold on, and became frightened. Jennie Wilson testified, in behalf of the plaintiff, in effect, that she was standing at the depot door at the time; that she did not see the plaintiff fall, because she supposed she would be killed, and so covered her eyes; that she saw the plaintiff "*on the platform when the train started the second time;*" that "the platform of the car on which she stood had not got by her when the train made the second stop, but was eight or ten feet west of her; that the train had stopped or slackened up, before it passed her, but she did not know as it stopped perfectly still. If it did, it was just for an instant; but it slacked."

The fact is stated by this witness, that the place where the plaintiff was when the train stopped or slackened was some distance west of where she stood at the depot door, while the place where she went onto the depot platform was shown conclusively to have been some feet east of where she stood; and hence her testimony in this regard is in direct conflict with the plaintiff's theory, and in harmony with the defendant's theory. The same may be said of the evidence of the plaintiff's daughter, who testified, in effect, that she was on the depot platform, on the east side of the depot door, when the train stopped; and that the car was in motion when she saw her mother go past her, standing on the lower step of the platform. Of course, but little reliance can be placed upon duration not measured by conduct, nor distance not measured by objects or measurements. A very careful reading and analysis of the testimony fails to disclose any evidence to sustain the fourth finding, that the plaintiff did not voluntarily step or jump from the cars onto the platform, except certain statements of the plaintiff and inferences which the admitted facts, and facts established by undisputed evidence, clearly show could not possibly exist. The same may be said with reference to the third finding of the jury, to the effect that the plaintiff, while standing upon the steps of the car platform, was thrown there-

from by the sudden starting of the train. The same is true, at least in part, of the thirteenth finding above stated.

We must conclude from the admitted facts, and facts established by evidence and circumstances not disputed, and which are of such a character as to preclude the possibility of the correctness of any contrary inference or statement, that the plaintiff not only went out of the car in which she was riding, onto the platform of the same, while the train was in motion, but that she also went down onto the steps, and from there stepped or jumped onto the depot platform, while the train was in motion. The question therefore recurs, whether such conduct on her part was contributory negligence.

In *Railroad Co. v. Aspell*, 23 Pa. St., 147, it was held that " a passenger who has been negligently carried beyond a station where he intended to stop, and where he had a right to be let off, may recover compensation for the inconvenience, loss of time, and labor of traveling back; but where the plaintiff, under such circumstances, jumped off the car when in motion, though warned not to do so, it was held that he could not recover for the injury sustained."

In *Gavett v. Railroad Co.*, 16 Gray, 501, it was held that " a passenger in a railroad car who, knowing that the train is in motion, goes out of the car and steps upon the platform of the station while the train is still in motion, is so wanting in ordinary care as not to be entitled to maintain an action against the railroad corporation for an injury therefrom."

In *Hickey v. Railroad Co.*, 14 Allen, 429, it was held that " a traveler by railroad cannot maintain an action against a railroad company to recover damages for personal injury sustained by him in consequence of his voluntarily and unnecessarily standing upon the platform of a passenger car while the train is in motion." See also *Nichols v. Railroad Co.*, 106 Mass., 463; *Harvey v. Railroad Co.*, 116 Mass., 269; *I. C. Railroad Co. v. Able*, 59 Ill., 131; *O. & M. Railroad Co. v. Schiebe*, 44 Ill., 460; *Burrows v. Railway Co.*, 63 N. Y.,

556; *Morrison v. Railway Co.*, 56 N. Y., 302; *Jefferson-ville Railroad Co. v. Swift*, 26 Ind., 459; *C. & A. Railroad Co. v. Randolph*, 53 Ill., 510; *I. C. Railroad Co. v. Slatton*, 54 Ill., 133; *O. & M. Railway Co. v. Stratton*, 78 Ill., 88; *C. & N. W. Railway Co. v. Scates*, 90 Ill., 586.

In *Secor v. Railroad Co.*, 10 Fed. Rep., 15, a passenger on a train that had approached a station and was still moving slowly, stood on the lower step of a car, in the act of stepping to the platform of the station, when, in consequence of the car being moved forward with a jerk, he was thrown upon the platform and injured; and DRUMMOND, C. J., "held that he was guilty of contributory negligence in attempting to alight from the train while it was in motion." *Bon v. Railway P. Ass. Co.*, 10 N. W. Rep. (Iowa), 225; *L. S. & M. S. Railway Co. v. Bangs*, 11 N. W. Rep. (Mich.), 276.

The cases cited are clearly in harmony with *Davis v. Railway Co.*, 18 Wis., 175. In the light of these authorities we must hold that, even assuming that the train did not stop in the first instance a sufficient length of time to enable the plaintiff in the exercise of due diligence to get off the car in safety, yet, as she passed out of the car and went down onto the steps of the car platform, and from thence stepped or jumped onto the depot platform while the train was in motion, contrary to the warning of the brakeman and bystanders who were present, she must be deemed guilty of negligence which materially contributed to the injury complained of, and hence the seventh and ninth findings of the jury are not supported by the evidence.

We are not certain but we would be justified in reversing the judgment by reason of irregularities in the submission of the case to the jury. The eighth question submitted was: "Were the defendant's agents guilty of negligence, either in not stopping long enough to allow the plaintiff to alight from the train, *or* in suddenly starting the train after the plaintiff came upon the platform, on her way from the car to the depot platform." To this the jury answered "Yes." Whether the

answer is to the first part *or* to the last part, it is impossible to tell. If the answer is to the first part of the question, then does it refer to the stopping of the train in the first instance, involved in the first question submitted, or to the second stopping of the train? If to the first stop, then it was already covered; if to the second, then it was immaterial, as it was conceded that that stop was but for an instant. If, on the contrary, the answer does not apply to the first part of the question, but to the last part, then it makes the negligence to consist wholly "in suddenly starting the train after the plaintiff came upon the platform on her way from the car to the depot platform," whereas that act of itself does not necessarily involve any want of care on the part of the defendant; and yet the ninth and tenth questions each assume that it did involve a want of care. Besides, the jury had already found, in answer to the third question submitted, that the train suddenly started while the plaintiff was standing upon the steps of the car platform. Again, the propriety of submitting the twelfth question to the jury may be doubtful, since it is not very manifest that it involves any material issue. Again, the general verdict seems to be in conflict with some of the special findings — notably the sixth. In submitting special verdicts to a jury, each question submitted should be limited to a single, direct and material controverted issue of fact, and in such a way that the answer will necessarily be positive, direct and intelligible. *Eberhardt v. Sanger*, 51 Wis., 72, and cases there cited. But we do not base our decision upon the irregularities in the verdict, as they were not discussed on the argument, and may have been committed at the instance of the defendant's counsel. Whether a general verdict can serve to sustain a judgment where there is a special verdict purporting to cover all the material and controverted issues of fact in the case, but some of which are conflicting or contrary to the evidence, *quœre*.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.