## BILL vs. STOLL.

*April 13 — May 10, 1882.*

EVIDENCE. *Transactions and communications with deceased person.*

> In ejectment it appeared that plaintiff claimed under a deed from one K., executed in 1858 and recorded in 1878; and that defendant, who disclaimed title and denied possession, had never been in possession, except as he had been overseer of a body of men who worked the land as members of a " colony " presided over by one O. Defendant's evidence tended to show that the deed to plaintiff remained in the grantor's hands for four or five years after its date, and was then delivered by the grantor to O., who retained possession of it until his death, in 1873; and that it was then delivered to plaintiff by an administrator of O.'s estate, without authority. Plaintiff was then allowed to testify to conversations and agreements between himself and O. in his life-time, tending to show that O. received and held the deed as plaintiff's agent. *Held,* that as defendant " sustains his liability to the cause of action," if at all, from having charge of men cultivating the land under O. as head of the colony, the evidence was inadmissible under sec. 4069, R. S.

APPEAL from the Circuit Court for *Manitowoc* County.

Ejectment, for forty acres of land, commenced May 27, 1878. The complaint is in the statutory form, and asks for mesne profits. The plaintiff recovered judgment by default, and was put into possession by execution issued thereon. The defendant's default having been excused on payment of

costs, he served an answer therein August 25, 1879, containing: (1) A general denial. (2) An allegation that the defendant had never been in possession, nor claimed title to, nor received any of the rents or profits of, the land. (3) That, more than twenty years before, the land had been purchased by one Kunzweiler for, and with funds belonging to, a voluntary association called the "Colony of St. Nazianz," of which one Oschwald was then the recognized head; that, at the request of Oschwald, Kunzweiler made several deeds of several tracts of lands, and in each named some member of the association as grantee, but never delivered any of the deeds, and the same were kept in Kunzweiler's possession several years, and then, on his withdrawal from the colony, turned over to Oschwald without any direction to have any deed delivered to the plaintiff, and Oschwald never delivered any deed to him, but the deed under which the plaintiff claims title was found among Oschwald's private papers after his death, in 1873, and was retained by the defendant as Oschwald's administrator until 1878, when one Shove, having become administrator *de bonis non*, got the deed into his possession and gave it to the plaintiff, and the same was thereupon recorded for the first time; that the plaintiff never paid Kunzweiler any consideration for the land, and never had any talk or dealings with him in relation to it, and that the colony had occupied the land for more than twenty years, and received the rents and profits, and paid all the taxes. On the first trial of these issues, a verdict and judgment were rendered in favor of the defendant.

On a second trial the plaintiff gave record evidence of title in Starkweather, December 12, 1857, through the foreclosure of a mortgage executed by Oschwald August 22, 1854, covering the lands in question and a large amount of other lands; also a deed from Starkweather to Kunzweiler, executed and recorded October 4, 1858, of the lands obtained

by Starkweather under the foreclosure, including the forty acres in question; also the record evidence of a deed from Kunzweiler and wife to the plaintiff, dated October 15, 1858, and recorded February 11, 1878; also evidence tending to show that all the forty, except about fourteen acres, had for some years been worked by men under the charge of the defendant, and the annual use of the portion so worked was worth about $70.  The defendant thereupon gave evidence tending to prove the following facts: Both the parties had for many years been members of the colony, the former as baker and the latter in charge of laboring men.  After the colony lost their lands by the foreclosure of the Oschwald mortgage, Kunzweiler purchased back in his own name from Starkweather 1,400 acres of land, including the forty in question, for the colony, and the colony, or Oschwald for them, went into possession.  The colony remained in possession of all the forty, except the fourteen acres which had been sold to other parties, until this suit.  In 1858 Kunzweiler, at the request of Oschwald, who claimed that some of the people of the colony were "getting ugly," executed several deeds of several pieces of land, running to sundry parties, including the deed to the plaintiff, but retained possession of all such deeds until 1862 or 1863, when he delivered all the deeds, including the one in question, to Oschwald, and then withdrew from the colony.  He never made any bargain or sale or agreement with the plaintiff of or concerning the forty in question, or any part thereof; but, about the time he executed the deed to the plaintiff, he did take from him a note and mortgage on the forty for about $350, which he assigned to Starkweather, and which was subsequently paid with money of the colony furnished by Oschwald.  Oschwald retained the deed, with others, until his death, in 1873, when it, with others, was found among his private papers.  It was then for some time in the possession of the defendant as administrator of Oschwald, and afterwards came into the pos-

session of one Shove as administrator *de bonis non* of Osch-
wald, and from him came into the possession of the plaintiff,
who had it recorded. The plaintiff withdrew from the
colony, and on the 2d of April, 1873, after the death of
Oschwald, his successor as head of the colony, Father Mutz,
and the defendant settled the plaintiff's account with the
colony by paying him $1,200 and taking his receipt there-
for, as follows:

"Received of *Anton Stoll* the sum of twelve hundred dol-
lars ($1,200), in full of all account of deceased Rev. Ambrose
Oschwald, up to date.

"*St. Nazianz, April 2, 1873.*                    GEORGE BILL.

"JOHN SCHUPP,

"MAX BENZINGER."

The plaintiff never made any claim to the land until 1877,
and never paid any taxes thereon. In rebuttal the plaintiff
was allowed to testify, against repeated objections on the
part of the defendant, as to his letting Oschwald, as head of
the colony, have money in 1854, while both were in the old
country; as to an understanding between them, prior to the
deed in question, in which Oschwald promised him forty
acres of land for certain moneys he had advanced; that the
deed in question was executed and delivered to him by Kunz-
weiler in pursuance of an agreement or understanding which
he had with Oschwald; that on the same day he received
the deed he gave it to Oschwald for safe-keeping; and also
as to a conversation between him and Oschwald touching
the giving of the mortgage, and its payment.

The jury returned the following special verdict: "1. *Ques-
tion.* Was the deed of Ulrich Kunzweiler and wife to the
plaintiff, dated October 15, 1858, of the premises described
in the complaint, ever delivered to the plaintiff? *Answer.*
Yes. 2. *Question.* Was the plaintiff the owner in fee of the
premises described in the complaint at the commencement of
this action? *Answer.* Yes. 3. *Question.* Did the defendant

actually occupy the premises described in the complaint, except the ten and a half or eleven acres occupied by Mrs. Sonners and the three acres occupied by Mrs. Gusterman, or exercise acts of ownership on the premises claimed, or claim the title thereto, or some interest therein, at the commencement of this action? *Answer.* Yes."

Upon this verdict judgment was rendered in favor of the plaintiff; and the defendant appealed therefrom.

The cause was submitted on the brief of *Nash & Schmitz* for the appellant, and that of *H. G. & W. J. Turner* for the respondent.

CASSODAY, J. The answer is purely defensive. It denies title in the plaintiff. It disclaims both title and possession in the defendant. It asserts possession in the association or colony, but fails to name, by way of counterclaim or otherwise, any legal or equitable owner or owners, or to allege that the defendant occupied under any such owner or owners. The whole case, therefore, turned upon the delivery or nondelivery of the deed to the plaintiff, and the possession of the premises.

The first question submitted to the jury involves the vital issue in the case. The second question submitted seems to be a mere legal conclusion from the first, and the propriety of its submission at all may be doubtful. The third question submitted involves four alternatives, so that it is impossible to tell which the answer "Yes" refers to; and hence it may be obnoxious to the criticism in *Jewell v. C., St. P. & M. Railway Co.*, 54 Wis., 610, and cases there cited. But the determination of this appeal must depend upon whether the court was correct in allowing the plaintiff to testify as to conversations, dealings and transactions had by him personally in relation to the land, and the consideration therefor, with Oschwald, under or through whom the plaintiff claims title. This class of evidence became peculiarly significant,

since the question was, in effect, submitted to the jury, whether such delivery of the deed to plaintiff was effected by delivery to or through Oschwald. We are clearly of the opinion that the class of testimony indicated should · have been excluded. The statute clearly provides that no party shall be examined as a witness in respect to any transaction or communication by him personally with a deceased person, in any civil action in which the opposite party derives his title or sustains his liability to the cause of action through or under such deceased person. Section 4069, R. S. Here the defendant " sustains his liability to the cause of action," if at all, by having charge of men cultivating the land under "Father Oschwald," as the head of the colony. The action is the same in effect as though it had been brought against "Father Oschwald " in his life-time; in which case, we apprehend, counsel would not have contended that, had the supposed action been revived in the name of the defendant, as administrator of Oschwald, the plaintiff would have been a competent witness in his own behalf as to such personal transactions and communications by him with the deceased. And yet, we think, there is no distinction in principle between the supposed case and the one here presented. Assuming that Kunzweiler's version of the execution of the deed by him, and the subsequent delivery thereof to Oschwald, was correct, and that the deed was not executed in pursuance of any agreement or understanding with the plaintiff, and since the undisputed evidence shows that after Oschwald obtained the deed he continued to hold the same until his death, it would seem to follow that there could have been no actual delivery.

If this is so, then it would seem that one object of the evidence referred to was to raise an inference in the mind of the jury that Father Oschwald, as the head of the colony, obtained the deed from Kunzweiler for and in behalf of the plaintiff, and hence that the delivery to him was, in effect, a

delivery to the plaintiff. Upon that theory it may be doubtful, independent of the statute, whether the plaintiff can be allowed to testify in his own behalf to transactions and communications between himself and his own agent or *equitable* grantor; but especially is this so under the statute as against one who claims to have committed the acts complained of under the general authority of the same Father Oschwald. But as the court puts this decision upon the statutory objection alone, it is unnecessary to pursue the subject further.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.