GERHARDT vs. SWATY and another.

*January 13 — January 30, 1883.*

EVIDENCE: *(1) Of possession of land; (2–4) Of location of section corners, boundaries of land, etc.; (10) Hearsay.*

TRESPASS: LOGS AND LUMBER. *(5) Nonsuit when one defendant not guilty. (6) Liability for trespass by partner. (7) Damages: evidence of ownership of logs. (8) When removal of logs a trespass. (12) "Consent" to cutting: instructions to jury.*

PARENT AND CHILD. *(9) Presumption as to agency of minor child.*

SPECIAL VERDICT. *(11) Waiver of objection to proposed question.*

1. Evidence, elicited by the defendants upon cross examination of one of plaintiff's witnesses, that the plaintiff went into actual possession of a part of a tract of land which he had bought and paid money upon, and that he "had papers" upon the whole tract, is *held* to show such a possession of the whole tract as will support an action for trespass against mere intruders. Whether such evidence would show an adverse possession of the whole tract, under subd. 4, sec. 4212, R. S., is not determined.

2. Where evidence of surveys is admitted, without objection at the trial, to show the location of section lines or corners, the competency of such evidence cannot afterwards be questioned on the ground that such surveys were not made in accordance with the statutes of the United States and the regulations made by the secretary of the interior in conformity thereto.

3. Sec. 770, R. S., has no reference to the establishment of lost or missing corners of sections or other subdivisions of government lands.

4. The evidence in this case (stated in the opinion) is *held* to have tended to show the true boundary of plaintiff's land, and to have entitled him to have the case submitted to the jury on that question.

5. In an action for trespass upon land against two defendants, a motion for a nonsuit as to both should not be granted, although the evidence does not show that one of them had ever been upon the land.

6. A person may be liable for a trespass upon land, committed by his partner for the benefit of the firm and of which he had the benefit, although he himself never went upon the land.

7. Uncontradicted evidence of actual and quiet possession of land is sufficient proof of ownership to enable a party to recover the

Gerhardt vs. Swaty and another.

highest market value of logs or timber cut upon such land, under sec. 4269, R. S.

8. The title to logs or timber cut and left upon land by trespassers remains in the owner of the land, and one who purchases from such trespassers, though in good faith, is himself a trespasser if, afterwards and with knowledge of the claim of the owner, he enters upon the land and removes such logs and timber.

9. The presumption is that a minor child, living with his father and using his team and conveyance in and about the business of the father, is acting on his behalf and under his directions.

10. The testimony of a surveyor as to information which he received from others relating to the location of a section corner, and upon which he acted in making a survey and establishing such corner, is inadmissible, especially where such information came from persons living and who could be produced as witnesses.

11. A party who does not object at the time to a question proposed to be submitted to the jury on the ground that it does not properly cover the case, will be held to have assented to its submission in the form proposed.

12. An affirmative answer to the question, " Did the defendants hire, assist, counsel, procure, *or consent to* the cutting of ties and timber upon plaintiff's premises, or carrying them away ?"— is *held* to fix a trespass upon the defendants where, in view of the instructions given, the jury must have understood that the word " consent," as used in the question, meant a consent by an active participation in the cutting of such timber. *Jewell v. C., St. P. & M. Railway Co.*, 54 Wis., 610, distinguished.

APPEAL from the Circuit Court for *Kewaunee* County. The case is thus stated by Mr. Justice TAYLOR:

" This action was brought to recover the value of certain cedar trees and cedar ties wrongfully and unlawfully taken from the plaintiff's land. The complaint, after alleging ownership and possession by the plaintiff of a certain described parcel of land, alleges: ' that on January 2, 1880, and at divers times thereafter, and on January 29, 1880, and at divers times thereafter, the said defendants unlawfully and wrongfully broke and entered the before-described close of this plaintiff, and cut timber thereon, and took and carried away from said land and converted to their own

use unlawfully and wrongfully, as aforesaid, 900 cedar trees, the property of this plaintiff, and about 1,000 cedar ties, the property of this plaintiff, to the damage of this plaintiff in the sum of $400. Wherefore the plaintiff demands judgment against the defendants for $400, and costs.' The defendants answered by a general denial.

"Upon the trial in the circuit court the plaintiff obtained a verdict for the value of certain ties and posts which he claims had been taken from his land by the defendants, and converted by them to their own use. The damages were assessed upon the basis of the value of the ties and posts at Ahnapee, the place to which they were taken from plaintiff's land, and where the defendants had the same in their possession before they were sent out of the state. From the judgment entered in the case the defendants appeal to this court, and assign as errors: *First*, the court erred in refusing to nonsuit the plaintiff; *second*, in permitting the jury to allow as damages the market value of the ties and posts at Ahnapee; *third*, in the reception and rejection of testimony; *fourth*, in submitting the fourth question of the special verdict to the jury; *fifth*, in the instruction given to the jury. The learned counsel for the appellants claim that the plaintiff should have been nonsuited for three reasons: (1) Because the evidence did not show that plaintiff was in the actual possession of the lands from which the ties and posts were taken, and showed no other title to such lands except such title as may be inferred from the possession thereof; (2) admitting that plaintiff's evidence tended to show that he was in possession of the lands described in the complaint, and from which it is alleged the ties and posts were cut and carried away, there is no evidence that such ties and posts were cut upon and carried away from the lands of the plaintiff; (3) because the evidence fails to show that *W. Swaty*, one of the defendants, was ever upon the lands of the plaintiff, or had any part in cutting and removing the ties and posts.

" The land described in the complaint is the E. $\frac{1}{2}$ of the E. $\frac{1}{2}$ of section 11, in the town of Lincoln, Kewaunee county. The evidence of the plaintiff's possession given on the trial is as follows: The son of the plaintiff testified: 'I know the east four forties of section 11. My father lives on these premises. He moved there in December, 1879; has been in possession of the land ever since. When he went into possession the two north forties were mostly green cedar timber. We never took anything off these forties. There were no fences on any of the land, not even surrounding the place where my father's house was. When I said in my direct examination my father is in possession of them, I meant he has got papers on them,— bought and paid considerable money down on them,— and this has reference to the whole four forties. It is all one piece of land.' The statement that his father had papers on the land was elicited on the cross examination of the witness, and the evidence was in no way objected to by the defendants, nor did they move to have it stricken out as incompetent or immaterial."

Other facts appear from the opinion.

For the appellants there was a brief by *H. G. & W. J. Turner* and *R. L. Wing*, and oral argument by *Mr. W. J. Turner*.

For the respondent there was a brief by *Timlin & Manseau*, and oral argument by *Mr. Timlin*. They argued, *inter alia*, that the action is trespass *de bonis asportatis*. *Grafton v. Carmichael*, 48 Wis., 660. As to what constitutes a *prima facie* case in questions of boundary, see *Barden v. Smith*, 7 Wis., 439. The government plat is evidence to settle the figure of the survey. *Alexander v. Lively*, 5 Mon. (Ky.), 160. Determining the line by right angle offsets is permissible. Instructions of Surveyor General, May 3, 1881, p. 21, sec. 13. The rectangular figure of the land will be taken in preference to any other. *Massie v. Watts*, 6 Cranch, 148; *Holmes v. Trout*, 7 Pet., 171. In this case the northeast cor-

ner of section 11 is properly determined by courses and distances, there being no known line or corner. *Fulwood v. Graham*, 1 Rich. (S. C.), 491; *Johnson v. McMillan*, 1 Strobh., 143; *McClintock v. Rogers*, 11 Ill., 279; *Bruckner v. Lawrence*, 1 Doug. (Mich.), 19; *Davis v. Rainsford*, 17 Mass., 207; *Galloway v. Brown*, 16 Ohio, 428; *Seaman v. Hogeboom*, 3 Barb., 215; *McIver v. Walker*, 9 Cranch, 173. The true northeast corner of section 11 will be presumed to be in a line from the known southeast corner of section 14 on the same course prolonged through the known southeast corner of section 11, to where said line intersects the township line on the north on the same course. *Billingsley v. Bates*, 30 Ala., 378; Instructions of Surveyor General, May 3, 1881, pp. 40, 41. The court will take judicial notice of the magnetic variations from the true meridian. *Bryan v. Beckley*, 6 Litt. (Ky.), 91.

TAYLOR, J. We think the evidence shows such a possession of the premises in question as will support an action of trespass against mere intruders, claiming no title in themselves or in those under whom they claim. If the plaintiff had in fact purchased the tract in question, and obtained a conveyance thereof, and entered into the actual possession of a part of the lands so purchased under claim of title to the whole, he would be deemed in the actual possession of the whole tract for the purpose of maintaining an action for a trespass thereon by one claiming no right or title thereto. His possession, as a general rule, extends to the whole tract conveyed by the deed under which actual possession is taken. The defendants called out the evidence that the plaintiff took possession of the premises under some kind of a paper title, which extended to the entire four forties; and the evidence is as conclusive on them as though the paper title had been given in evidence by the plaintiff. Had they objected to parol evidence of the plaintiff's title it is probable that he

would have put it in evidence on his part. Whether this proof would be sufficient to show an adverse possession of the four forties under the provisions of subd. 4 of sec. 4212, R. S. 1878, against the true owner, need not be decided, as we think a more liberal rule should be and is adopted against a mere trespasser, claiming no title or right to the premises.

The second objection, that the evidence does not show that the timber in controversy was cut upon the lands of the plaintiff, was a pure question of fact for the jury, and unless, as is claimed by the learned counsel for the appellant, there is no competent evidence tending to show what was the true west line of plaintiff's land, the verdict of the jury upon that question is final. The evidence is undisputed that the northeast corner of plaintiff's land is the northeast corner of section 11 in the town of Lincoln; and it is also undisputed that the northeast corner of section 11, as located by the government surveyors, cannot be found, and that the same was probably never marked in fact by such surveyors on the ground; that such corner may be termed a lost or missing corner. The southeast and the southwest corners of plaintiff's land are known corners, and both sets of surveyors called as witnesses on the trial agree in the location of such corners. It is insisted that no surveys made for the purpose of establishing the northeast corner of section 11 are admissible as evidence for that purpose, unless such surveys be made in strict accordance with the statutes of the United States and the rules and regulations made by the secretary of the interior in conformity thereto. And it is claimed by the learned counsel for the appellant that none of the evidence introduced on the part of the plaintiff tending to show the location of that corner was competent for that purpose, and consequently there is no evidence in the case showing the northeast or northwest corner of plaintiff's land: so that the west line of plaintiff's land is not shown,

and consequently the proofs do not show that the timber cut, and for which a recovery was had, was cut upon his land.

There are two answers to this claim of the defendants: *First*, the defendants did not object on the trial to the evidence offered by the plaintiff tending to show the location of his west line, on the ground that the surveys made by his witness were not made in strict accordance with the rules and regulations of the secretary of the interior upon that subject. If the rules and regulations of the secretary of the interior are such as it is now contended by the counsel for the appellants they are, then it is evident that neither party tried the case in the court below upon the theory that the surveys, in order to be admissible as evidence, must be made in accordance with such rules. It is not claimed that the surveys offered in evidence on the trial by the defendants were made in strict accordance with such rules. We must hold, therefore, that if there be any law of this state which requires the surveyor to proceed in a prescribed way in locating a lost or missing corner, the parties waived the objection to the evidence offered that it did not comply with such rule of law. *Second*, we do not find that there is any such rule as contended for by the learned counsel for the defendants established by any law of this state. The only law on the subject is sec. 770, R. S. 1878, which reads as follows: "Whenever a surveyor is required to subdivide a section or smaller subdivision of land established by the United States survey, he shall proceed according to the statutes of the United States and the rules and regulations of the secretary of the interior in conformity thereto." It is clear to me that this section has no reference to the establishment of lost or missing corners of sections or other greater or lesser subdivisions of government lands. We have found no statute of the United States which prescribes how a lost or missing corner shall be established, and have been

referred to none by the learned counsel for either party. But we do find statutes upon the subject of the subdivision of sections and of smaller subdivisions, and we also find rules and regulations made by the secretary of the interior upon that subject. The law above quoted declares that the subdivision of sections shall be made in the manner prescribed by the statutes of the United States, and the rules and regulations made in conformity to such statutes. As there are no statutes of the United States on the subject of lost or missing corners, there can be no rules made in conformity thereto.

It was claimed on the trial by both parties that the evidence offered by them respectively tended to locate the true west line of the plaintiff's land, and from our examination of the evidence as stated in the printed case we think this claim was justly made by both. The plaintiff's testimony certainly tends to prove where the northeast corner of section 11 was in fact located or intended to be located by the original United States surveyors. The statutes of the United States require the north and south lines of sections to be run north and south on the true meridian, and the presumption is that they were so run, unless the lines marked and corners fixed by such surveyors upon the ground contradict that presumption. The presumption is that the interior north and south lines of a section are run in the same direction as the east line of the township.

In stating the method of subdividing a township the instructions of the commissioner of the general land office to the surveyors are as follows: "(1) The first mile, both of the south and east boundaries of each township you are required to subdivide, is to be carefully traced and measured before you enter on the subdivision thereof. This will enable you to observe any change that may have taken place in the magnetic variation, as it existed at the time of running the township lines, and will also enable you to compare the chaining with that upon the township lines." "(2) Any discrep-

ancy arising either from a change in the magnetic variation or a difference in measurement, is to be carefully noted in the field-notes." "(3) After adjusting your compass to a variation which you have thus found will retrace the eastern boundary of the township, you will commence at the corner of sections 35 and 36, on the south boundary, and run a line parallel to the range line, forty chains, to the quarter-section corner, which you are to establish between sections 35 and 36. Continuing on said course forty chains further, you will establish the corner of sections 25, 26, 35, and 36." See instruction of the general land office to the surveyors general, issued May 1, 1881, p. 37.

The surveyor, upon whose evidence the plaintiff relies for the correctness of the west line of his land, proceeded upon the theory that the east line of section 11 should be parallel with the east township line. On the presumption that the surveyors had followed these instructions, and in order to so establish such east line, he first ran the line on the east town line from the known southeast corner of section 12, as established by said surveyor, half a mile north to a like known quarter-post on the east side of section 12, and found the bearing of that line was 3 deg. and 40 min. What the witness meant by the expression that the bearing of that line was 3 deg. and 40 min., is not made very clear by the printed case, but from what he says subsequently it is probable that he meant that the line was run on the true meridian, supposing the magnetic variation to be 3 deg. and 40 min. east at the time he made his survey; but it is not very material what he in fact meant by this expression, as the other lines run by him were found to run in the same direction. He ran a line from the southwest corner of section 36 north to the southeast corner of section 11, and he claims in running that course he struck the northwest corners of 36, 25, and 24, and the west quarter-posts of said sections, and came out within a few feet of the southeast corner of section 11; he then ran

west, from the southeast corner of section 11, forty chains, and struck the south quarter-post of section 11; he then set the eighth-post in the south line of section 11, equally distant from the quarter-post and the southeast corner of said section, and this eighth-post all agree was set in the proper place; he then ran from the eighth-post north one mile on the same bearing with the east township line and the other line which he had run from the southwest corner of section 36 to the southeast corner of section 11, and this line so run he claims is the true west line of plaintiff's land.   In order to add strength to the claim for the correctness of this line, this surveyor also testifies that he found the original quarter-post in the west line of section 14 and the section corners of sections 26, 27, 23, and 24, and that a line run between these points had the same bearing as the east township line, and the other line run by him as the west line of sections 12, 13, 24, 25, and 36.   He also ran a line from the known southwest corner of section 33 to the known northwest corner of section 28, and this line had the same bearing as the others run by him.  He also ran a line from the known west quarter-post of section 14 to a stone in the north line of the township, which is taken by all parties to be the northwest corner of section 2 and the northeast corner of section 3, and that the bearing between these two known points was 2 deg. and 30 min. instead of 3 deg. and 40 min., as the other lines run by him, and yet this line so run crosses the north line of sections 10 and 11, twenty rods west of the point which is claimed by the defendants' witnesses to be the northwest corner of said section 11.   If this line north from said quarter-post had run on the bearing of 3 deg. and 40 min., as the other lines were run, it would cross the north line of sections 10 and 11 about six and one half rods still further west.

We think the fact that all the lines run in said township between points known to be corner posts and quarter-posts set by the original surveyors, correspond in direction with

the east line of the township, is strong presumptive evidence that the interior north and south lines between the sections were run on lines having the same bearings as those running from actual corners marked by the surveyors on the ground; and unless this presumption be overcome by evidence showing that they were not so run in fact, it should prevail. Having the southwest corner of the plaintiff's land established at a point which is admitted to be the actual corner, and the direction of the east line of his land from north to south, a line run from such southwest corner north on a line parallel with the east line would be his west line, unless it be shown that the north line of section 11 is shorter than the south line. In this case there does not appear to be any such evidence. If it had been clearly shown that there was a known government corner north of the northeast corner of section 11 on the line between sections 1 and 2, it would perhaps be a more satisfactory way of fixing the location of the east line of section 11 to run a line from the known southeast corner of section 11 in a straight line north to the first known government corner or quarter-post on the line between sections 1 and 2. The evidence in this case tends to show that there was no known government quarter-post or section corner on the line between sections 1 and 2, and it would be impossible, therefore, to establish the east line of section 11 in that way. And neither of the parties extended the line which they claim to be the east line of section 11 on the same course to the north township line for the purpose of ascertaining at what point it would strike such line, but it is evident from the testimony, taken as a whole, that following the two courses which the respective parties claim to be the east line of section 11, the defendants' line would strike the town line about eighteen chains east of plaintiff's line — a difference which shows quite conclusively that there must be a grave mistake made by the witnesses of one or both of the parties. We think the plaintiff's evidence tended to show the

true west line of the plaintiff's land, and he was entitled to have the case submitted to the jury on that question. The method pursued by the plaintiff's witnesses to establish the line in dispute has been acted upon by other courts, and to a certain extent approved. See cases cited by the learned counsel for the respondent on page 20 of his brief; and evi-- dence of the kind given by the plaintiff in this case was approved of as the most satisfactory in the cases of *Billingsley v. Bates*, 30 Ala., 376, and *McClintock v. Rogers*, 11 Ill., 279.

As it is not contended that the evidence given by the defendant of the locality of plaintiff's west line was absolutely conclusive as to its location, it becomes unnecessary to state it or comment upon it. Both parties having introduced competent evidence as to its true location, it was for the jury to determine the question of fact, and not for the court. *Barden v. Smith*, 7 Wis., 439.

The claim of the defendant that the court should have ordered a nonsuit because the proofs did not show that the defendant *W. Swaty* had ever been on the plaintiff's land, was properly denied for two reasons: *First*, there was no request to nonsuit as to the defendant *W. Swaty*, alone — the motion was to nonsuit as to both; *second*, a failure to prove that *W. Swaty* had ever been on the plaintiff's land was not conclusive that he was not liable for the trespass charged in the complaint. The evidence shows conclusively that he was the partner in business of the other defendant, and tended to show that he had the benefit of the trespass of his partner, if he had committed any, and that the trespass, if committed by his partner, was for the benefit of the firm. *Tucker v. Cole*, 54 Wis., 539.

It is claimed that the court erred in directing the jury to assess the damages at the market price of the posts and ties at Ahnapee. This objection seems to be based upon the idea that the plaintiff did not show that he was the owner of the land from which the property was taken, and so did not bring

himself within the provisions of sec. 4269, R. S. It is said that the plaintiff relied upon his possession of the land from which the timber was cut, and not upon his ownership. We think the counsel misapprehends the effect of proof of possession of real estate in an action of trespass for an injury thereto.

In the complaint the plaintiff alleges that he was the owner of and in possession of the lands in question. On the trial he made proof of his actual possession. This proof, uncontradicted, was evidence as against a mere trespasser, not only of possession but of ownership by the plaintiff. A party in the actual and quiet possession of real estate is presumed to be the owner thereof until there is some proof to the contrary. This evidence brought the defendant within the provisions of said section, and entitled the plaintiff to damages, as assessed by the jury, if the defendants were shown to have been connected with the cutting and carrying away. The fact that the plaintiff's evidence did not show the exact number of posts and ties cut and carried away, does not prevent him from recovering for any. It is for the jury to say, upon the whole evidence, how many were taken, and if there be evidence in the case tending to show that there were as many cut and carried away as the jury assessed damages for, the verdict must stand. There was certainly evidence tending to prove that the number found by the jury, viz., 2800 ties and 950 posts were cut and carried away. We think it quite clear that the evidence tends to show that the defendants were connected with the cutting and carrying away of the plaintiff's timber, and had notice that the plaintiff claimed to own the lands from which it was cut before any of it was taken from his land. If the defendants bought the ties and posts after they were cut and before they were removed from the plaintiff's land, and afterwards removed them, knowing that the plaintiff claimed to own the lands on which they were cut, and that he claimed that the persons

who cut and sold them to defendants were trespassers — they would be liable to pay the damages prescribed by said sec. 4269, even though they might have been ignorant of the plaintiff's claim at the time they bought them from the supposed trespassers. The ties and posts having been cut on plaintiff's land, the title to them remained in him, and the entry of the defendants upon plaintiff's land thereafter, and the removal of them with knowledge that the plaintiff claimed to own them, was a trespass on the part of the defendants, and would bring them within the provisions of said sec. 4269. The fact that they might have bought them in good faith before that, does not relieve them from the charge of taking them from plaintiff's land by an act of trespass, knowing that they had been cut by a trespasser.

We think the evidence of the plaintiff, showing the fact that the defendant's minor son drew a part of these ties and posts from the plaintiff's land with the defendant's team, and that he was informed by the plaintiff that he claimed to own the land on which the ties, etc., were situated and forbid his taking them away, was competent. The presumption is that a minor child, living with his father, and using his team and conveyance in and about the business of such father, is acting on his behalf and upon his directions until the contrary is made to appear by evidence. The evidence of the father, afterwards given, undertook to explain in whose interest the son was at work. No wrong was done to the defendants by the admission of this evidence.

The other evidence, which it is said was improperly admitted, does not seem to have been objected to by the defendants. That which the defendants moved to strike out as hearsay evidence was not acted upon by the plaintiff's surveyor, and could not, therefore, have prejudiced the defendants. The hearsay evidence given by the defendants' surveyor, and which was stricken out on motion of the plaintiff, was acted upon by such surveyor in establishing

the northwest corner of section 11, and for that reason we
think it was properly stricken out, especially where such
hearsay is from persons living and who could be produced as
witnesses on the trial. In this case one of the persons by
whom the statements were made was a witness on the trial
for the defendants, and the other seems to have lived in the
county where the trial was had.

It is objected by the counsel for the defendants that the
fourth question submitted to the jury as a part of their spe-
cial verdict was improperly submitted to them, and that the
affirmative answer to it given by the jury does not establish
the fact that the defendants, or either of them, were guilty
of the trespass complained of. The record does not disclose
that the question was objected to by the defendants at the
time it was proposed for the reason that it did not properly
cover the case. It must be held, therefore, that the defend-
ants assented to the submission of the question as drawn by
the court, and the only question is whether the affirmative
answer of the jury establishes the fact that the defendants
were guilty of the trespass complained of. The question
reads as follows: "In case you answer 'yes' to the second
question, then did the defendants hire, assist, counsel, pro-
cure, or *consent* to the cutting of ties and timber upon
plaintiff's premises, or carrying them away?"

The second question referred to in the fourth reads as fol-
lows: "At the time stated in the complaint were there any
ties and timber cut upon the plaintiff's premises?" Both
questions were answered in the affirmative. It is claimed
that the jury might have answered "yes" to the fourth ques-
tion, because they found that the defendants had *consented*
to the cutting and carrying away of plaintiff's timber, and
may have at the same time found that they did not hire, as-
sist, counsel, or procure the same to be done. It is undoubt-
edly true that a person who has knowledge that another is
committing a trespass upon his neighbor's land does not

implicate himself in such trespass by merely consenting or assenting to such acts by such third party, having no other connection with the trespass; still, if he is connected with the trespasser, or is to have the avails of the trespass, then such consent on his part might make him liable. We think the court properly explained to the jury what consent on the part of the defendants would make them liable as trespassers, and it must be presumed that if the jury answered the question in the affirmative for the reason that the defendants consented to such cutting, etc., they found that they consented in the way indicated in such instructions.

The learned circuit judge, after reading the question to the jury, said: "In case you find the defendants or either of them, being engaged in a joint enterprise, hired timber to be cut on the plaintiff's premises, or assisted, directed, procured, or consented to such trespass being committed, either in cutting or hauling the ties away, then you will answer 'yes.'" "But if you find the defendants made a contract with Noak to furnish him supplies while at work, and agreed to receive or purchase ties and posts of him- at the market price in Ahnapee, without counseling or directing him where to cut ties, or knowing that he was to cut or carry them from the plaintiff's land, then you will answer 'no' to this question." "The mere fact that the defendants paid some of the men employed by Noak upon his order, and charged the amount so paid to him, would not make them responsible for his acts. It is only a mode of paying for the ties." "Still you may consider the evidence for the purpose of determining whether the defendants managed, directed, counseled Noak in cutting and hauling the ties, or whether Noak acted as their agent; for if the contract between Noak and the defendants was only a pretense and cover to wrongfully obtain possession of the ties, then the defendants are responsible for Noak's acts; but if they acted in good faith, as claimed by the defendants, then payment of men would not of itself

make them liable for the original trespass, if any was committed."

The foregoing are all the instructions given the jury upon this question. No part of them was excepted to by the defendants, and no other or further instructions were asked by them upon this point. These instructions, it seems to us, presented the question of the defendants' liability fairly to the jury, and they have answered the question in the affirmative. We must hold that they answered it in the light of the instructions given, and that after such instructions they must have understood that the word "consent," as used in the question, meant a consent by an active participation in the original trespass in one of the methods pointed out by the judge in his instructions. This finding, considered in the light of the instructions above quoted, is sufficient to fix the trespass upon the defendants. The case of *Jewell v. C., St. P. & M. Railway Co.*, 54 Wis., 610, 617, which is cited for the purpose of sustaining the defendants' exception to the above question and answer, is not applicable to this case. The objection to the question propounded in that case was that it submitted two propositions in a disjunctive form, in order to establish negligence on the part of the defendant, one of which propositions, if answered affirmatively, would not tend to prove such negligence; and one affirmative answer to both propositions would not, therefore, establish such negligence. It is not stated in that case that two propositions may not be submitted in the disjunctive form requiring but one affirmative answer, if the jury would be justified in giving an affirmative answer if either proposition taken separately would justify such answer.

In the present case it is not contended but that the jury were justified in answering the question propounded in the affirmative, if either of the propositions contained in the question was supported by the evidence; nor is it denied that such affirmative answer would convict the defendants of the

trespass complained of, if the words " or consent " had been omitted therefrom.   If the defendants either assisted, hired, counseled, or procured the cutting and carrying away of the plaintiff's timber, there can be no doubt that they were trespassers, and it is not contended by the learned counsel for the defendants to the contrary.   These propositions were all properly submitted in one question, as an affirmative answer as to all or any of them would convict the defendants of the trespass.   And if the defendants desired to have a separate question upon each proposition, in order to determine on what particular fact the jury found in the affirmative, such separation of the question should have been asked before the case was submitted to the jury.   The addition of the words " or consent," in one view of the case, might have presented an immaterial question to the jury, but, as explained by the learned judge in his instructions, the jury could not have been misled by it; and they must have intended by their answer that consent in the question meant a guilty connection with the trespass.

The view we have taken above upon the competency of the plaintiff's evidence to establish the boundaries of the plaintiff's land, disposes of the objections taken to the instructions of the court upon that subject.

*By the Court.*— The judgment of the circuit court is affirmed.