PAULUS, Respondent, vs. O'NEILL, Executor, Appellant.

*February 2 —March 19, 1907.*

*Fraud: Recovery of money paid by participant: Court and jury:*
*Waiver of right to have question submitted to jury.*

After the death of one P., who was the holder of a note given by
B. for $1,000, P.'s widow, having possession of the note and
fraudulently intending to appropriate it to her own use, sur-
rendered it to B. in consideration of a new note to her for
$900, and B. afterwards paid to her $350 on the new note.
Subsequently B.'s liability to the estate of P. on the original
note was established, and recovery from the widow of the
$350 paid to her was sought by B.'s executor. Upon the evi-
dence (stated in the opinion) it is *held* that the question
whether B. was a party to the fraud, so that the amount paid
by him could not be recovered, should have been submitted to
the jury.

TIMLIN and SIEBECKER, JJ., dissenting, are of the opinion
that the right to have said question submitted to the jury was
waived by B.'s executor, he having requested a special verdict;
having presented the form thereof, not including that question,
to the court; having made no objection to the verdict as sub-
mitted; having first brought the question to the attention of
the court, after the jury were discharged, by a motion for
judgment which assumed the right and duty of the court to
pass upon the question; and not having moved for a new trial
after such motion for judgment was denied.

APPEAL from a judgment of the circuit court for Clark
county: E. W. HELMS, Judge. *Reversed.*

John Paulus during his life held a note of $1,000 against
Lemont E. Brown. Paulus died December 11, 1902. Shortly
after his death his widow, *Ellen Paulus,* had possession of the
note, and surrendered it to Brown for a new note of $900
executed by Brown and payable to her. On the 13th day of
October, 1903, Brown paid $350 on this $900 note. On No-
vember 19, 1903, Brown died. The $1,000 note was filed
against Brown's estate by the administrator of the Paulus
estate. The executor of Brown's estate, *James O'Neill,*

defendant and appellant here, defended the claim on the $1,000 note. The claim on the $1,000 not was allowed against Brown's estate. The claim for balance due on the $900 note was filed against Brown's estate by *Ellen Paulus,* plaintiff and respondent here, and defended by the executor of Brown's estate, and also a counterclaim set up by him to recover the $350 paid on this $900 note by Brown.

In the county court all of these claims were tried together, and the trial resulted in judgment against Brown's estate allowing the $1,000 claim in favor of the Paulus estate and disallowing the claim of plaintiff, *Ellen Paulus,* for balance due on the $900 note, and allowing the counterclaim for the $350 and interest in favor of the Brown estate and against *Ellen Paulus.* The plaintiff, *Ellen Paulus,* appealed to the circuit court. The case was tried by the court and a jury. The defendant demanded a special verdict, which was submitted. The jury found as follows:

"1. Was John Paulus at the time of his death on December 11, 1902, the owner and in the possession of the $1,000 note executed to him by Brown? *A.* Yes. 2. Was said note ever paid to John Paulus in his lifetime? *A.* No. 3. Did said $1,000 note come to the possession of *Ellen Paulus* after the death of her husband? *A.* Yes. 4. Did *Ellen Paulus* surrender and deliver to Brown said $1,000 note in consideration for the note of $900 signed by Brown payable to *Ellen Paulus* and dated January 14, 1903? *A.* Yes. 5. Was such surrender and delivery by *Ellen Paulus* of said $1,000 note to Brown the sole and only consideration received by Brown for the making of said $900 note? *A.* Yes. 6. Did Lemont E. Brown pay to the plaintiff, *Ellen Paulus,* on October 13, 1903, the sum of $350 on said $900 note which was indorsed thereon? *A.* Yes (by the court)."

The court ordered judgment dismissing the claim of the plaintiff for balance due on the $900 note and dismissed the defendant's counterclaim. The circuit judge rendered a decision in writing, in which he held that the transaction between *Ellen Paulus* and Lemont E. Brown which resulted in

the surrender of the $1,000 note and the execution of the $900 note was fraudulent, and that every inference from the facts proved seemed to point to unlawful motive on the part of both plaintiff and Brown, and that none of the inferences pointed the other way, hence the counterclaim should be dismissed; that in so far as the fraudulent purpose had ripened into action by the payment of the $350 it should not be disturbed. Defendant appealed to this court from so much of the judgment as dismissed the counterclaim.

For the appellant there was a brief by *Grow & Campman,* attorneys, and *J. R. & C. R. Sturdevant,* of counsel, and oral argument by *Charles F. Grow.*

For the respondent the cause was submitted on the brief of *W. F. Bailey.*

KERWIN, J. It is established by the verdict on the trial below that John Paulus was the owner of the $1,000 note at the time of his death, that the same was unpaid, and came into the possession of his widow, *Ellen Paulus,* shortly after his death; that she surrendered it to Brown in consideration of the $900 note payable to her; that such surrender was the only consideration received by Brown for the $900 note; and that on October 13, 1903, Brown paid to *Ellen Paulus* $350 on the $900 note. From the findings of the jury it appears that *Ellen Paulus* intended by the exchange of the $1,000 note for the $900 note to appropriate to her own use the $1,000 note belonging to the Paulus estate. The main question upon this appeal is whether Brown participated in such fraudulent transaction and knew, or ought to have known, that Ellen Paulus was not the owner of the note.

In talking with Mr. Sturdevant in January after the death of John Paulus, Brown exhibited the note and claimed it had been paid. Mr. Sturdevant asked him if the note was given for the money he borrowed to put on the mill, and he said it was, and that the administrator wanted him to pay the $1,000

over again, and said: "If I have my note, doesn't that show I paid it? Ain't I all right if I have my note?" To which Mr. Sturdevant replied: "I don't know as to that. The note is pretty good evidence it is paid, but who did you pay it to?" To which Brown replied: "What difference does that make so long as I have my note?" It also appears from the evidence that Mr. Sturdevant asked him if he paid it to Mr. Paulus, and Brown replied: "If I have my note, ain't that all right?" but did not state to whom he paid it. The testimony also shows that he was given to understand at this time that the amount of the note would have to be paid to the estate, and that he said, in effect, he could pay it again if he had to.

Under this evidence mainly, in connection with the facts established by the verdict, the court below found fraudulent participation on the part of Brown as a matter of law. The appellant insisted that the court erred in indulging in a presumption of fraud, and that if there was any evidence in the case sufficient to raise the question it was a question of fact and should have been submitted to the jury. It is well settled that fraud can be established only by evidence that is clear and satisfactory. *Bowe v. Gage,* 127 Wis. 245, 106 N. W. 1074; *Shaw v. Gilbert,* 111 Wis. 165, 86 N. W. 188; *F. Dohmen Co. v. Niagara F. Ins. Co.* 96 Wis. 38, 71 N. W. 69. We cannot find that there is such clear and satisfactory evidence as would justify the court below in holding that fraud upon the part of Brown was established as a matter of law and therefore the question should have been submitted to the jury.

*By the Court.*—That part of the judgment appealed from is reversed, with costs, and the action remanded for a new trial upon the counterclaim.

Timlin, J. (*dissenting*). I cannot agree that the judgment of the circuit court should be reversed. The counsel for de-

fendant in the court below requested a special verdict. The special verdict set out in the majority opinion was handed up to the trial court presumably by the party requesting it. There was no suggestion that any other or additional question of fact should be submitted to the jury. There was no objection to the verdict as submitted. After the jury returned the special verdict the defendant's counsel moved the trial court for judgment on said verdict in favor of the defendant and against the plaintiff dismissing the plaintiff's complaint, and also moved for judgment in favor of the defendant and against the plaintiff on the counterclaim pleaded in the answer. The trial court granted the defendant's motion for judgment on the verdict and denied the defendant's motion for judgment on the counterclaim, and upon such ruling ordered judgment entered accordingly, dismissing both the plaintiff's claim and the defendant's counterclaim. The defendant filed exceptions to that part of the order dismissing his counterclaim, and on these exceptions, upon appeal from the judgment, seeks now to reverse that judgment because the special verdict does not cover all the issuable controverted facts. There is nothing in the return to this court to indicate that there was any replication to the defendant's counterclaim. The right to recover on the counterclaim was denied, upon the ground that the evidence established that the defendant's decedent and the plaintiff were engaged in a scheme to defraud the Paulus estate, and that the $350 was paid on the $900 note in part execution of such fraudulent scheme, and therefore could not be recovered back within the rule of *Clarke v. Lincoln L. Co.* 59 Wis. 655, 18 N. W. 492; *Wight v. Rindskopf,* 43 Wis. 344; *Fargo v. Ladd,* 6 Wis. 106. The question of the equal delict of the plaintiff and the defendant's decedent in the matter in question is rightly treated in the majority opinion as a question of fact not covered by the special verdict. It was not included in any pleading in the case, but is of such nature as to make it proper to be raised as a bar

against the defendant's right of recovery on the counterclaim
if established by the preponderance of evidence. Can there
be any efficient or practical administration of law under a
rule which forbids the addition of a general finding to a spe-
cial verdict and reverses judgments because the special verdict
does not cover and pass upon all the controverted issues of
fact in the case, where there was no request by either party to
submit that fact to the jury, no objection to the special ver-
dict as submitted, where the fact was not pleaded, where the
fact in question was brought to the attention of the trial court
for the first time after verdict rendered and jury discharged,
by motion for judgment which assumed the right and duty of
the court to pass upon it, and where there was no request for
a new trial? No greater impeachment of the law, no severer
reproach on its administration, is conceivable to me than that
the rules of its procedure are so established and framed that,
contrary to the interest of the public, which requires the ter-
mination of legal controversy, and without reference to the
merits of the cause or the rights of the parties *inter se*, judg-
ments are reversed and cases ordered for retrial upon techni-
cal omissions, against the happening of which ordinary pru-
dence is unavailable and ordinary intelligence insufficient to
guard. Add to this that the rule in question permits a party
to offer an incomplete special verdict to the court or to stand
by in silence while an incomplete special verdict is presented
and submitted to the jury without calling the attention of the
trial court in any way to its incompleteness, to continue to take
part in the trial, and after the verdict is returned, if it be
found in the main against him on the merits, to raise the
objection that there are some special issues of fact developed
by the evidence and not covered by the verdict, and so frus-
trate the whole object of the trial. It would be pertinent in
this connection to ask for what purpose laws are made and
courts are instituted? Surely not for the purpose of entang-
ling the parties litigant in difficulties of procedure dealing in

Paulus v. O'Neill, 131 Wis. 69.

mere dialectics or sitting in judgment for the discussion and determination of impractical and unprofitable sophisms.

No matter how wisely rules of law are framed, little benefit flows therefrom if impracticable and unworkable rules of procedure intervene to prevent their application. To any person of considerable experience in the trial of causes it must be manifest that requiring from a jury a special verdict determining by separate propositions or answers to separate questions the various issues of fact which arise upon the pleadings, or which arise during the trial and might have been pleaded, forbidding any general finding to accompany these special findings, permitting the parties litigant to allow such special verdict to be submitted without objection and without suggestion that other propositions of fact should be embodied therein, and to continue to participate in the trial after such verdict has been proposed, settled, and submitted, and to move for judgment thereon or on the verdict and evidence after such verdict has been returned, and then, after having failed to obtain favorable answers from the jury, to overthrow all the work of the trial on the ground that there are some issuable controverted propositions of fact not covered by forms which have acquired an arbitrary significance and unworkable rule of procedure. All accurate generalizations of issuable relevant facts from a mass of minor facts for the purpose of framing a pleading is done in an office with time and care, not in the hurry of a trial, is aided at common law by forms which have acquired an arbitrary significanc‾ and comprehensiveness, and the omissions which often occur after all this are frequently cured by answer, waiver, or the statutes of jeofail. Even in pleadings, which take place before instead of at the end of a trial, and undertake to set forth only one side of the controversy, there were many miscarriages of justice. In Code pleading this process of selection and generalization, the result of study and care, is helped out by presumption and liberal construction, and defects or

omissions are cured by waiver, by failure to object to the reception of evidence, by the freedom of amendment, and to some extent by a sort of arbitrary and comprehensive value given to some forms of expression. The work of drafting a special verdict in a complicated case is much more difficult than the art of pleading, must be done more hastily, has not the above-mentioned adventitious aids, and under this rule of the majority opinion there is nothing can cure a slip or omission therein. It would be no justification of the rule of the majority opinion even if there were in this state half a dozen legal luminaries who could in difficult cases successfully accomplish this feat of properly drafting a special verdict. The laws are, or should be, for all, not alone for the heaven-descended. The laws are, or should be, for complicated conditions of fact as well as for simple conditions. Besides, is it not the experience of the law that, with all the aids and advantages possessed by the pleader, common-law pleading was finally found so inadequate for the purpose of administering justice that it was absolutely discarded in the country of its origin, and exists today nowhere unimproved and unmodified by statute? But an examination of the decisions of this court, as well as an appeal to experience, will go to show the impracticability of the rules of procedure in question.

In *Cullen v. Hanisch,* 114 Wis. 24, 32, 33, 89 N. W. 900, citing and referring to cases running through more than sixty volumes of reports and covering more than twenty-five years in time, the court, in a tone of regret at the miscarriage of justice which does honor to the writer, says that "in some jurisdictions such rule does not seem to be understood." In *Patnode v. Westenhaver,* 114 Wis. 460, 90 N. W. 467, this court said:

"The manner in which a special verdict should be framed has been so often, so recently, and so fully stated *that we cannot reasonably expect, by further discussing the subject, to eradicate the false notions of the statute in respect thereto* evidenced by the verdict in this case."

Shall we then give up in despair? See, also, in the same strain, *Mauch v. Hartford,* 112 Wis. 40, 87 N. W. 816; but compare the disapproved detail therein with that approved in *Hennesey v. C. & N. W. R. Co.* 99 Wis. 109, 74 N. W. 554. Compare the form of verdict found in *Bigelow v. Danielson,* 102 Wis. 470, 78 N. W. 599, and there held to be insufficient, with the case of *Mauch v. Hartford, supra,* and *Patnode v. Westenhaver, supra;* also compare *Lee v. C., St. P., M. & O. R. Co.* 101 Wis. 352, 362, 77 N. W. 714. Compare *Andrews v. C., M. & St. P. R. Co.* 96 Wis. 348, 71 N. W. 372, and questions there held necessary to be submitted with the criterion of good pleading. Such examination and comparison, I think, will demonstrate that "in some jurisdictions" the rules of this court relative to what issues of fact should and what should not be submitted to the jury in a special verdict are, after a quarter of a century of precept and practice, much misunderstood. It will be readily conceded that the proper application of these rules is still more difficult than the understanding of the rules. It would, I think, be the part of wisdom to look for the cause of this misunderstanding elsewhere than in the obtuseness or perverseness of "some jurisdictions." To me it seems that if we retain the special verdict in our practice, and I think it should be retained, we must treat it as the wisdom of the law has treated every other step in practice. That is to say, that all controverted questions of fact necessary to uphold the judgment of the court below and not covered by the special verdict must be held to have been decided by the court by its judgment, and that the party who fails to object to the special verdict on this ground and fails to request the insertion therein of the omitted items of fact has thereby waived his right to a jury trial *pro tanto.* Waiver is one of the necessary and fundamental doctrines of the common law. Littleton says, "It is the passing by of a thing." The ancient books on practice abound with examples of waiver. The recognition of this common-law doctrine is

widespread.   28 Am. & Eng. Ency. of Law (1st ed.) 587–591, and cases.

Two divergent lines of decisions in this court may be here referred to, namely: *Sherman v. Menominee River L. Co.* 77 Wis. 14, 45 N. W. 1079; *Jenewein v. Irving,* 122 Wis. 228, 99 N. W. 346, 903; *Hildman v. Phillips,* 106 Wis. 611, 82 N. W. 566, which hold that such defect in a special verdict is not waived by a failure to object to the questions submitted or to request the submission of other questions. It is noticeable that this rule is based on *Sherman v. Menominee River L. Co.* 77 Wis. 14, 45 N. W. 1079, decided at a time when it was not unusual in this state to take a general finding in addition to the special verdict.   The court said:

"It is claimed that the counsel for the defendant made no objections to the questions submitted, and made no request to submit such questions of negligence, and therefore waived the same.   This would undoubtedly be so where such special verdict is accompanied by a general verdict.   *Kelley v. C., M. & St. P. R. Co.* 53 Wis. 74, 9 N. W. 816.   But where a judgment is based upon a special verdict alone, which fails to determine all the material and controverted facts in issue, there can be no such waiver."

After criticising the practice of submitting a general finding with a special verdict, this court finally, in *Wills v. Ashland L., P. & St. R. Co.* 108 Wis. 225, 84 N. W. 998, called attention to such criticism and condemned the practice. None of these cases, however, covers the instant case, because there was here not only the absence of objection to the special verdict and the failure to request additional findings, but also the action of appellant's counsel in requesting the special verdict and presumably handing it up to the court in its present form. There was also in the instant case the act of defendant's counsel supplementing the above and confirming his attitude upon the question, which consisted in waiting until after the jury was discharged and then moving for judgment on his counterclaim, not basing such motion on the verdict, hence necessarily

on the evidence not covered by such verdict.   The law in this
state, however, seems to be that if one without calling or re-
questing a jury go to trial on the whole case before the court
he will be held to have waived his right to a jury trial, but if
after a jury is called and has passed upon all the issues sub-
mitted or requested to be submitted to them, and are dis-
charged, a party submits all the remaining questions to the
court by request that the court adjudge in his favor thereon,
he will be held not to have waived a jury trial as to such facts
omitted from the verdict.

There is a line of decisions in this court commencing with
*Leonard v. Rogan,* 20 Wis. 540, where it was held that a party
to a civil action who goes to trial before the judge alone with-
out objection waives his right to have a jury pass upon any of
the issues of fact.   *Hrouska v. Janke,* 66 Wis. 252, 28 N. W.
166, where it was held that, notwithstanding the statute re-
quired that a verdict in ejectment should state the particular
estate recovered (sec. 3084, R. S. 1878), the parties litigant
waived this requirement where they failed to object to the
verdict as submitted.    *Bullen v. Milwaukee T. Co.* 109 Wis.
41, 85 N. W. 115, where the court said:

"There is a further conclusive answer to the complaint that
the court failed to submit the question of the authority of the
officers of the corporation to make the note.    The request
made to the court to submit the single issue as regards whether
the corporation received consideration for the note waived
the submission of any other question of fact."

*Schultz v. C., M. & St. P. R. Co.* 48 Wis. 375, 4 N. W. 399,
where the court said:

"Regularly, it thereupon became the duty of the court to
submit to the jury questions of fact in writing, covering all
of the material issues in the case upon which there was any
conflict of evidence.   R. S. 1878, sec. 2858; *Hutchinson v.
C. & N. W. R. Co.* 41 Wis. 541.   The court thus submitted
a single question, to wit, whether the plaintiff, when injured,
was in the service of defendant, and failed to submit specially

other material controverted questions of fact in issue in the case. Counsel for defendant objected generally to the question submitted, and to a portion of the charge of the court. But no specific objection was made or exception taken to the failure of the court to submit questions covering all of the issues. The court attempted to comply with the statute. The objection only informed the court that counsel thought the question submitted an improper one. No suggestion was made that counsel thought or desired that other questions should be submitted. All other issues were in fact submitted to the jury in the general charge, and we are unable to discover any erroneous statement of the law therein. It seems to us that under such circumstances it was the duty of counsel then and there to make the specific objection that the question submitted was not the only one in issue, and that they desired a special submission of other issues. Failing to do so, but standing by during the whole proceeding without objection or exception reaching to the irregularity, we think, and so hold, that they waived the irregularity, and cannot afterwards be heard to complain of it. *Any other rule would or might render the statute giving the right to a special verdict an instrument of wrong and injustice.*"

Since this opinion was written the "other rule" has to a certain extent been established with the effect of rendering the statute giving the right to a special verdict "an instrument of wrong and injustice." What matters it that there was also a general verdict in the case last referred to? Does that give the silence and tacit acquiescence of the party who fails to fect from a moral or legal standpoint? If a party can so bring the omission to the notice of the court any different effect from a moral or legal standpoint? If a party can so waive his right to have the finding of a jury upon the whole case and so permit the court to find, and if he can so waive his right to have the finding of the jury on a specific issue of fact in a case where the special verdict is supplemented by a general finding, why do not the same acts constitute a waiver of the right to have the jury pass on the question, and a consequent authority to the court to pass upon the question, in cases where the special findings of the jury are accompanied by no

general verdict? In *Geisinger v. Beyl,* 80 Wis. 443, 50 N. W. 501, it was alleged as error that the verdict of the jury did not cover the issue of occupancy or possession of the land in controversy. The court said:

"The special verdict contains no finding to that effect. Hence, unless such nonoccupancy is proved by the uncontroverted evidence, the judgment cannot be upheld. Such is the rule of *Hutchinson v. C. & N. W. R. Co.* 41 Wis. 541, and many other cases decided by this court. .It is claimed on behalf of defendant that there is no testimony on the subject. Were such the fact, we would be called upon to determine whether there is any legal presumption of occupancy or nonoccupancy—a question suggested, but not determined, in *Pier v. Fond du Lac,* 38 Wis. 470. But, for reasons that will now be stated, we think the fact is otherwise. . . . But there is another fact in the case which is fatal to the objection under consideration. The court said to the jury that 'the questions which the court directs you to answer involve all the controverted facts of the case upon which plaintiff founds his claim.' No exception was taken to this language. If the defendant thought that the nonoccupancy of the land was a controverted fact in the case, or was entirely unproved, then was the time for him to speak. But he failed to do so. His silence is equivalent to an admission that the nonoccupancy was proved. A suggestion on the trial that the plaintiff's proofs were defective in this particular would no doubt have called out further proof on the subject, or led to the submission of the question to the jury, or to a direct ruling that nonoccupancy was sufficiently proved. *Under the circumstances, it would be most unjust to permit the defendant to dispute the sufficiency of the proofs in that behalf.*"

In *Gerhardt v. Swaty,* 57 Wis. 24, 14 N. W. 851, it is ruled that a party who does not object at the time to a question proposed to be submitted to the jury on the ground that it does not properly cover the case will be held to have assented to its submission in the form proposed. In *Wright v. Mulvaney,* 78 Wis. 89, 46 N. W. 1045, it was ruled that a party by whom a question was prepared and at whose request it was submitted

to the jury for a special verdict cannot be heard to allege the insufficiency of such question as a ground for a reversal of the judgment. In this case there was no general verdict in addition to the special verdict, and the court based its ruling on *Schultz v. C., M. & St. P. R. Co.* 48 Wis. 375, 4 N. W., 399. The omission was of an issuable fact on which the whole case might well turn.

With reference to waiver in general it is said in *Charles Baumbach Co. v. Hobkirk,* 104 Wis. 488, 80 N. W. 740, citing *Leonard v. Rogan,* 20 Wis. 540, that the right of trial by jury is waived by going to trial before the court without objection. Was not this precisely what was done by the appellant in the instant case with reference to his motion for judgment on the counterclaim? That the right of trial by jury may be waived was settled as early as *Millett v. Hayford,* 1 Wis. 401. In some of the later cases it seems to have been considered that the judgment had no support unless it could be maintained by the verdict aided by undisputed evidence. How this conclusion was arrived at does not appear. It has no basis in law. Upon what does a decree in chancery rest? A judgment of a justice of the peace? A judgment at common law in a case where a jury was waived? A judgment at law under the Code where findings are waived by failure to object or request? *Jones v. Jones,* 71 Wis. 513, 38 N. W. 88. Certainly there is nothing in the law to prevent a jury from deciding part of the issues in a case and the court deciding the remaining issues of fact, if the parties expressly consent thereto or if they do that which is equivalent to a consent thereto.

I think I have now shown: First, that the rule laid down in *Sherman v. Menominee River L. Co.* 77 Wis. 14, 45 N. W. 1079, and followed in some later cases, with reference to waiver is an impractical rule, difficult of application in most cases, almost impossible in many cases, that it has resulted in unnecessary reversals, much misunderstanding, and often in

injustice.  Second, that there are two contradictory and con-
flicting lines of authority in this court upon the question of
waiver of the right to have questions of fact determined by a
jury.  If this is correct there should, I believe, be no hesita-
tion in at once adopting the rule contended for in this opinion.
For the purposes of the instant case it is not even necessary to
overrule any prior decisions of this court, because this case
goes beyond any yet decided by this court in rejecting the
doctrine of waiver.  But even were it otherwise, considering
the serious consequences of the rule in which this court finds
itself now involved, to the effect that the objection that the
special verdict does not cover all the issues of fact in the case
is not waived by failure to object on that ground at the trial,
or by failure to request that an additional finding be sub-
mitted to the jury, I should not hesitate to overrule to this ex-
tent *Sherman v. Menominee River L. Co.* 77 Wis. 14, 45 N.
W. 1079, and the cases hereinbefore cited following it.  They
are not decisions upon which property rights have become
fixed or settled.  They are aptly described in *Whereatt v.
Worth,* 108 Wis. 291, 295, 84 N. W. 442, where it is said:

"When, however, the rule of *stare decisis* is invoked to se-
cure adherence to a wrong doctrine which may be corrected
without prejudice to any one other than a party before the
court, and others similarly situated as regards pending litiga-
tions, where no rule of property is required to be changed,
courts are not so firmly bound by a previous ruling but that
they may correct it with considerable freedom, if firmly con-
vinced that it stands in need of correction."

See, also, *Pratt v. Brown,* 3 Wis. 603; *Hawks v. Pritzlaff,*
51 Wis. 160, 7 N. W. 303; *Sauer v. Steinbauer,* 10 Wis. 370.

MANSFIELD, C. J., said in the court of King's Bench in
England in 1760:

"Where an error is established and has taken root, upon
which any rule of property depends, it ought to be adhered to
by the judges, till the legislature thinks proper to alter it, lest
the new determination should have a retrospect, and shake

many questions already settled; but the reforming erroneous points of practice can have no such bad consequences, and therefore they may be altered at pleasure, when found to be absurd or inconvenient." *Robinson v. Bland,* 1 W. Black. 256, 264.

In *Stow v. Converse,* 4 Conn. 17, 30, it is said: "Even the sanction of precedent, however ancient and uniform, is never conclusive on a point of practice;" and in *Baker v. Madison,* 62 Wis. 137, 151, 22 N. W. 141, 583, it is said: "This being really a matter of practice, the maxim *stare decisis* has no application. When satisfied that adherence to any rule of practice will work injustice, the court will change or modify the rule to prevent the wrong, no matter how long it has been observed."

I believe it should have been held in the case at bar that the appellant waived his right to have the question of *par delictum* passed upon by the jury, that he submitted it to the court for determination, and that the court determined that fact against him upon sufficient evidence. Upon the mere erroneous disposition of this case I might have yielded to the judgment of the majority without dissent. But it is otherwise when the decision of the instant case continues and extends the scope of an unjust and impracticable rule injurious alike to public and private interest and tending to tie up this court in a mere web of sophistry of its own weaving.

SIEBECKER, J. I concur in the dissenting opinion of TIMLIN, J.