PRATT, Respondent, vs. PECK and another, Appellants.

*February 25 — March 16, 1886.*

*Special verdict: Questions must cover issues: Sale of chattels: Delivery.*

1. The form of a special verdict is largely in the discretion of the trial court, but the questions submitted must cover all the controverted issues of fact.
2. Though what constitutes a delivery and acceptance of chattels sold so as to pass the title may be a mixed question of law and fact, yet the controverted questions of fact involved therein must in some way be submitted to the jury,

APPEAL from the Circuit Court for *Winnebago* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

This is an action to recover the purchase price of 400,000 feet of lumber, the most of which was destroyed by fire while piled in the plaintiff's mill-yard at Oshkosh.

August 9, 1883, the plaintiff was the owner of a saw-mill in Oshkosh, and engaged in the business of manufacturing saw-logs into lumber. Near the plaintiff's premises, but in a different block, the defendants, at the same time, owned a sash, door, and blind factory, and were engaged in the manufacture of such articles therein. On the day named it was verbally agreed between the parties that the plaintiff would sell, and the defendants purchase, all the first, second, and third clear and common shop stock of one and one-half and one and one-fourth inch plank, then piled in the plaintiff's mill-yard of the previous year's and spring's cut, estimated to be about 600,000 feet, and 400,000 feet of the next thereafter sawed in the plaintiff's mill of plank lumber, one and one-half and one and one-fourth inches thick, first, second, and third clear and common shop stock, of which one third was to be one and one-fourth inches thick, and two thirds thereof one and one-half inches thick, for which the defendants were to pay $14 per 1,000 feet for common shop stock; $24 per 1,000 feet for third clear; and $34 per thousand feet for first and second clear. The complaint alleges, in addition to the above, that the lumber in the plaintiff's yard at the time of the agreement was to be paid for in full as of September 1, 1883,— that is to say, in cash, or interest-drawing, bankable notes; and the 400,000 feet, thereafter to be cut and sawed, to be paid for in ninety days after it should be piled in the plaintiff's mill-yard, without interest; that in and by the agreement the plaintiff was to draw said lumber to the defendants' factory, along from time to time, as the defendants needed the same in operating their factory. The whole controversy relates to the delivery and acceptance of the 400,000 feet, and the issues made by the pleadings relate mainly to those questions.

At the close of the evidence, and before argument to the jury, the defendant demanded a special verdict, and requested the court to submit to the jury the following ques-

Pratt vs. Peck and another.

tions, to wit: " (1) At what time, or upon the happening of what event, did the parties both agree that property should pass? (2) Did the minds of the parties ever meet upon any understanding that the property should pass before actual delivery by the plaintiff; that is, before the lumber was drawn by plaintiff to defendants' mill, or to such mill as he should direct? (3) Had the defendants, at the time of the fire, accepted the lumber,— the 400,000 feet of lumber? (4) What, if anything, under the contract between the parties, had the plaintiff to do to complete the contract on his part as to the 400,000 feet to be sawed? (5) Was the lumber hauled at defendants' order scaled and graded at time of hauling, and charged for by plaintiff according to such grading and scaling? (6) Was there any agreement between the parties that the title to the 400,000 feet to be manufactured should pass from plaintiff to defendants before actual delivery of lumber by hauling?"

The court refused to submit to the jury any of those questions, but did submit to them twenty-five questions, which, with the answers thereto, were to the effect (1) that the contract was for 1,000,000 feet, made August 9, 1883, as stated, to be of the kinds, quality, dimensions, and at the prices, and to be paid for and sawed, as stated, to wit, the piles manufactured and then in the plaintiff's yard, estimated at 600,000 feet, and 400,000 feet thereafter to be manufactured, to be piled in the plaintiff's saw-mill yard for the defendants, (2) to be marked with the name of the defendants, (2½) and to remain there piled until the spring of 1884; (17) that the plaintiff did not tell one of the defendants, on or about September 1, 1883, that the lumber was the property of the plaintiff, and at his risk until paid for, when it would become the property of the defendants, and plaintiff's insurance would not cover it; (13) that when the 400,000 feet were being piled in the plaintiff's yard, the defendants went upon the piles, but it was not scaled or

inspected; (5) that after the plaintiff had manufactured and piled said lumber, to wit, October 1, 1883, he notified the defendants that said lumber had been sawed and piled; (6) that October 1, 1883, the plaintiff marked said lumber with the defendants' name on the piles thereof; (18, 19) that the plaintiff did not ascertain the amount of the 400,000 feet of lumber sawed under the contract in any other manner than by counting the piles, and estimating the amount; (20, 21) that the plaintiff did not ascertain the amount of first and second clear parcel of the 400,000 feet in any other way than by judging of the amount thereof that would naturally be made from the quantity of logs he was sawing; (22) that the plaintiff piled the third clear and shop common parcel of the 400,000 feet in the same piles, without any separation (23, 24) and did not ascertain the amount thereof in any other manner than by judging of the amount of each kind that would naturally be made from the quantity of logs sawed; (16) that October 2, 1883, the plaintiff notified one of the defendants that the 400,000 feet had all been sawed and piled, and that the plaintiff's foreman had notified the defendants that the plaintiff had marked the same to the defendants, and the defendants then and there replied that it was all right; (7) that after the burning of the defendants' factory (October 4, 1883), and before the destruction of the lumber in question, the defendants requested the plaintiff to sell for them this 400,000 feet of lumber, (8) and they also, during that time, offered and endeavored to sell the same to Gould, of Oshkosh; (14) that, before the destruction of the lumber, the defendants had examined the same, to see if it was cut into such thicknesses as required by the contract; (3) that the plaintiff duly fulfilled and performed all the conditions of said contract on his part up to the time of the fire, November 15, 1883, (4) and nothing was then left undone by the plaintiff, (9) and nothing then remained to be done by the plaintiff or de-

fendants in hauling, surveying, grading, or inspecting the lumber; (12) that the plaintiff then had insurance on lumber in his mill-yard to the amount of $29,000; (10) that the 400,000 feet of lumber was not included in the proofs of loss made by the plaintiff to show to the insurance companies his loss by the fire of November 15, 1883; (11) that the insurance money was paid to the plaintiff, less the discount for advance payment; (15) that subsequent to the partial destruction of the 400,000 feet by fire, November 15, 1883, the plaintiff did not claim to be the owner thereof; (25) that the plaintiff was entitled to recover as damages $8,677.97.

Due exceptions were taken to the several questions which the court refused to submit and the several questions submitted. From the judgment entered against the defendants and in favor of the plaintiff upon such verdict, the defendants appeal.

For the appellants there was a brief by *Weisbrod, Harshaw & Nevitt,* attorneys, and *Moses Hooper,* of counsel, and oral argument by *Mr. Weisbrod* and *Mr. Hooper.* To the point that on an executory contract for sale and delivery the title does not pass until there is delivery and acceptance, unless there is a definite understanding that it shall pass before delivery on some event, they cited *Olson v. Mayer,* 56 Wis. 554; *Galloway v. Week,* 54 id. 607; *Fletcher v. Ingram,* 46 id. 200; *Pike v. Vaughn,* 39 id. 503; *Stephens v. Santee,* 49 N. Y. 35; *Lingham v. Eggleston,* 27 Mich. 328; *Hatch v. Oil Co.* 100 U. S. 131; *Elgee Cotton Cases,* 22 Wall. 187; *Dittmar v. Norman,* 118 Mass. 319; *Rider v. Kelly,* 32 Vt. 272–3; *Haney v. The Schooner Rosabelle,* 20 Wis. 247.

*Gabe Bouck,* for the respondent, contended, *inter alia,* that in the bargain and sale of *specific* personal property the title passes without payment or actual delivery. The risk of loss is on the buyer. 1 Benj. on Sales, secs. 315, 318, 320, 321; *Leonard v. Davis,* 1 Black, 476; *Bissell v. Balcom,* 39 N. Y. 275; *Dyer v. Libby,* 61 Me. 45; *Terry v. Wheeler,*

25 N. Y. 520; *Woert v. A. & S. R. Co.* 67 id. 538; *Garfield v. Paris*, 96 U. S. 557; *Scott v. E. C. R. Co.* 12 Mees. & W. 33; *Goddard v. Binney*, 115 Mass. 450; *Merchants' Nat. Bank v. Bangs*, 102 Mass. 295; *Hayden v. Demets*, 53 N. Y. 426; *Hunter v. Wetsell*, 84 id. 549; *Gray v. Mayor of N. Y.* 46 N. Y. Super. Ct. 494; *Morey v. Medbury*, 10 Hun, 540; *Ruthrauff v. Hagenbuch*, 58 Pa. St. 103; *Seckel v. Scott*, 66 Ill. 106; *Willis v. Willis's Adm'rs*, 6 Dana (Ky.), 48; *Sweeney v. Owsley*, 14 B. Mon. 413; *Wing v. Clark*, 24 Me. 366; *Phillips v. Moor*, 71 id. 78; *Townsend v. Hargraves*, 118 Mass. 325; *Webster v. Granger*, 78 Ill. 230; *Jenkins v. Jarrett*, 70 N. C. 255; *Davis v. Jones*, 3 Houst. (Del.), 68; *Philbrook v. Eaton*, 134 Mass. 398; *Brown v. Wade*, 42 Iowa, 647; *Iron Cliffs Co. v. Buhl*, 42 Mich. 86; *Barrett v. Goddard*, 3 Mason, 107; *Warder v. Hoover*, 51 Iowa, 491; *Haskins v. Warren*, 115 Mass. 514; *Freeman v. Nichols*, 116 id. 309; *Thompson v. Wedge*, 50 Wis. 642; *Mason v. H. Whitbeck Co.* 35 id. 167; *Bertelson v. Bower*, 81 Ind. 512. The defendants examined the lumber as it was piled. When piled and marked to them they were notified and said it was all right. Afterwards they requested the plaintiff to sell it for them, and also tried to sell it themselves. This was a complete acceptance. Brown on Stat. of Frauds, secs. 316*b*, 321, 321*e*, 337; *Blenkinsop v. Clayton*, 7 Taunt. 597; *Olson v. Mayer*, 56 Wis. 551; *Mason v. H. Whitbeck Co.* 35 id. 164; 1 Benj. on Sales, sec. 144. The title passed, although something was yet to be done in the way of measurement. *Sewell v. Eaton*, 6 Wis. 490; *Gill v. Benjamin*, 64 id. 362; *Burrows v. Whitaker*, 71 N. Y. 291. To constitute a valid tender under an executory agreement, the law requires only such acts as are practicable, according to the character of the property and the nature of the business. *Hayden v. Demets*, 53 N. Y. 426; *Boynton v. Veazie*, 24 Me. 286; *Bethel S. M. Co. v. Brown*, 57 id. 9. See, also, Benj. on Sales, secs. 319, 320, 331, 332, 394, 418; *Fletcher v. Ingram*,

46 Wis. 191; *Powers v. Dellinger*, 54 id. 389; *Scott v. Wells*, 6 Watts & S. 357; *Shelton v. Franklin*, 68 Ill. 333; *Straus v. Minzesheimer*, 78 id. 492; *Barrow v. Window*, 71 id. 214; *Callaghan v. Myers*, 89 id. 566; *Adams M. Co. v. Senter*, 26 Mich. 73; *Riddle v. Varnum*, 20 Pick. 280; *Sedgwick v. Cottingham*, 54 Iowa, 512; *King v. Jarman*, 35 Ark. 190; *Gans v. Holland*, 37 id. 483; *Puckett v. Reed*, 31 id. 131; *Shepard v. Lynch*, 26 Kan. 377; *Morgan v. Perkins*, 1 Jones Law, 171; *McNeil v. Keleher*, 15 Up. Can. C. P. 470; *Groat v. Gile*, 51 N. Y. 431; *Burrows v. Whitaker*, 71 id. 291; *Hurd v. Cook*, 75 id. 454; *Richmond Iron Works v. Woodruff*, 8 Gray, 447; *Marble v. Moore*, 102 Mass. 443; *Odell v. B. & M. R. Co.* 109 id. 50; *Lynch v. O'Donnell*, 127 id. 311; *Dugan v. Nichols*, 125 id. 43; *Bemis v. Morrill*, 38 Vt. 153.

CASSODAY, J. The parties substantially agreed in several particulars, and in a few they radically differ. It is admitted that August 9, 1883, the defendants agreed to purchase of the plaintiff 1,000,000 feet of lumber, of which 600,000 feet was dry and then in piles in the plaintiff's mill-yard, and that the balance of 400,000 feet was to be the first thereafter sawed by the plaintiff, and to be piled in the plaintiff's mill-yard, and there remain until dry in the spring. It is agreed that all the lumber was to be of the several dimensions, kinds, and qualities named, and that the defendants were to pay therefor the several prices stated, and that the grades were to govern the prices. It is agreed that the defendants were to pay for all the dry lumber in the yard, at the time of making the contract, as of September 1, 1883, and that they did; and for the green lumber in ninety days after it should be sawed. It is agreed that the plaintiff was to haul all the lumber to the factory of the defendants, as required by them, but in lots not less than 10,000 feet in a day. It is admitted that the plaintiff commenced hauling the dry lumber to the factory of the defendants, and con-

tinued doing so until their factory burned, October 4, 1883; and that in doing so each load was graded by the plaintiff's foreman as it was loaded upon the wagon; and that a bill of each such load was made out, and sent with the load to the defendants; and that at night the plaintiff's book-keeper would send to the defendants a statement or bill of what had been hauled to them during the day, and that then he charged the defendants the amount of those bills each day, as it was hauled to them; and that, after the defendants' factory burned, the same was process was continued as to the dry lumber hauled by the plaintiff to Gould's mill, to whom the defendants sold it. It is admitted that September 1, 1883, the defendants paid the plaintiff, on the dry lumber, $10,000 cash, and adjusted the balance, and that on the same day they got the dry lumber insured in their own names.

It is claimed by the defendants that the plaintiff did not commence hauling to their factory until a day or two before September 1, 1883; that September 1, 1883, they and the plaintiff inspected the piles of dry lumber; and that the plaintiff formally delivered the same to them, and that they accepted the same, and then put their name upon the piles, and then paid the money and obtained the insurance, as stated. The time when the hauling was commenced, and of the inspection and marking by the defendants, is denied by the plaintiff, who claims that it was the next day after the contract was made, and in pursuance of it. He also claims that by the agreement he was to pile the green lumber in his yard at a place designated by the defendants, and, when so piled, mark the same with their name. This is denied by the defendants, who insist that they were only to accept the green lumber as theirs when the same should be delivered to them by the plaintiff as agreed, and that, in making the contract of purchase, nothing was said as to who should have the title to the lumber, nor where it should

be piled, except that they requested the plaintiff to pile it open, so that it would dry quick.

Manifestly, the contract when made, August 9, 1883, was entirely executory in its nature,— certainly it was as to the 400,000 feet thereafter to be manufactured. The contract being thus purely executory, it is evident that the title would not pass to the defendants until the 400,000 feet should be actually delivered, as required by the contract actually made, or until the defendants should accept of the same as their property. There is nothing in the numerous questions submitted tô the jury, covering either of these issues, unless it be by mere inference. Some of the questions submitted were undisputed, and hence not material issues of fact for the jury, within the meaning of the statutes. Some were exceedingly remote, and it may be doubtful whether they had any bearing upon either of those issues. Several were mere items of evidence tending, more or less remotely, to prove or disprove one or the other of the questions above suggested but not submitted. Some of them consisted of mere admissions or non-admissions of the parties, or one of them.

" In the trial of cases, many questions are put to the witnesses which are material, because the answers may tend to prove or disprove some issuable fact; but it does not follow that every question so put to a witness is in itself a material issue of fact, and to submit each such question to a jury, by way of special verdict, would in many cases elicit from them nothing more than an abstract of the evidence." *Eberhardt v. Sanger*, 51 Wis. 76. Here a large portion of the special verdict is a mere abstract of evidence; and it is a very partial abstract at that, leaving several disputed facts, bearing more or less remotely upon the questions suggested, undetermined. Every special verdict should, at least, submit to the jury every controverted issuable fact. 51 Wis. 77; *Hoppe v. C., M. & St. P. R. Co.* 61 Wis. 358;

*McLimans v. Lancaster*, 63 Wis. 604. True, the form of a special verdict is largely in the discretion of the trial court, but the questions submitted should cover all the controverted issues of fact; otherwise there must necessarily be a failure to determine such issues, and the result must be a mistrial. Such, we think, was the result here.

It was suggested on the argument that the questions of delivery and acceptance each involved a conclusion of law, and hence were improper to be submitted to the jury. They do not, however, seem to be as objectionable in that respect as questions 3, 4, and 9, which were submitted to the jury. As to what constitutes acceptance or delivery so as to pass title under such executory contract the authorities cited by counsel sufficiently indicate, but need not be considered here. Frequently, much depends upon the terms of the contract actually made. Whenever the delivery or acceptance is into the actual possession of the vendee the question would seem to be substantially one of fact. Where the delivery or acceptance is merely constructive or symbolical, it may depend very much upon the intention of the parties as expressed in the contract or by what they subsequently say and do. Assuming that it may be a mixed question of fact and law, still the question of *fact* involved in each should be submitted to the jury in some form, and the verdict is necessarily defective without such submission. If submitted in a general way, they should be accompanied by proper instructions, so that the jury may intelligently pass upon the facts embodied in them. We give no intimation as to the form of the questions which should be submitted to the jury, except so far as necessary to indicate the defective character of the special verdict in question. As indicated above, the form of the verdict is largely within the discretion of the trial court.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.