## SHERMAN, Respondent, vs. THE MENOMINEE RIVER LUMBER COMPANY, Appellant.

*April 30 — May 20, 1890.*

*Master and servant: Injuries from defective machinery: Special verdict: Court and jury.*

1. In an action for personal injuries alleged to have been caused by defects in an edger through which the plaintiff was engaged in running lumber, the jury found that the edger was out of repair, but to the question, "Was the want of repair of the edger a cracked or broken roller or rollers, or rollers that were worn out of proper form by use?" they merely answered "Yes." The complaint alleged that one of the rollers was cracked and broken, but did not allege that they were worn out of proper form by use, and there was no evidence that such was the case. *Held,* that such indefinite and uncertain answer could not aid in supporting the judgment.

2. To the question whether the defendant's agents knew that the edger was liable on occasions to throw back with great force planks and boards that were passing through it, the jury answered that there was no proof upon which they could base an answer to that question. *Held,* that this was equivalent to a negative answer and should have been received as such, and that it was error to send the jury back, after causing to be read to them portions of the testimony of one witness, but omitting other material portions and other testimony on the same subject.

3. In the absence of evidence as to whether the defendant's agents knew of plaintiff's inexperience and ignorance of the dangers connected with the machinery, the jury cannot be permitted, in deciding the question, to rely upon mere inference, conjecture, and their own personal experience.

4. A question as to whether, if the plaintiff had known that under certain circumstances boards were likely to be thrown back from the edger, he could have avoided the injury, being based entirely upon a hypothetical state of facts which the plaintiff insists did not exist, should not have been submitted to the jury.

5. A special verdict which does not determine all the material and controverted facts in issue, is defective, and if it is unaccompanied by a general verdict, such defect is not waived by a failure to object to the questions submitted or to request the submission of others.

APPEAL from the Circuit Court for *Marinette* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

This action is brought to recover damages by reason of personal injury sustained by the plaintiff, October 9, 1883, while in the employ of the defendant, in its saw-mill in Marinette, and while engaged in handing boards to another servant of the defendant, who was then engaged in feeding the edger in said saw-mill, by being suddenly struck by a board on his right thigh with such force as to crush and break the same, and make it necessary to amputate his right leg, which was done on that day.

'The complaint alleges two causes of action, and the first is to the effect that the defendant and its managing agents negligently provided and used an unsafe, defective, and insecure edger, and which defect consisted, among other things, in not being properly set up and held together,— that is to say, that the roller above the board, and which propelled the board against the saw, was so carelessly and negligently attached that it often became raised or thrown up by a small piece of bark or splinter coming from the board, so as to loosen its hold thereon and allow it to be thrown back when it struck the saw; that the lower roller was cracked and broken so that a heavy board would bend it down, and thus allow the board to be thrown back violently when struck by the saw. The second cause of action, as therein alleged, is to the effect that the defendant, well knowing of the plaintiff's youth and inexperience in all matters relating to saw-mills and the dangers therewith connected, negligently and carelessly set him at said work, which at all times and under all circumstances was extra hazardous and dangerous, without notifying or cautioning him of such danger, or showing him how to avoid the same.

The answer admits the corporate existence of the defend-

ant, such employment, and the receiving of the injury, but otherwise denies each and every allegation in the complaint.

At the close of the trial, the jury, under the charge of the court, returned a special verdict to the effect (1) that at the time and place complained of the plaintiff was at work for the defendant in the saw-mill, with another person in the employ of the defendant, running lumber through an edger machine propelled by steam-power,— such other person being in charge of, and feeding lumber to, the machine, and the plaintiff passing lumber to the feeder of the machine; (2) that at said time a board or plank that the feeder was passing through the edger was thrown back by the edger against the plaintiff, thereby causing the injury complained of; (3) that at the same time said edger was out of repair, so that it did not do its work properly and safely. The fourth question and answer were as follows: "If you answer 'No' to the last question, this question need not be answered, but, if you answer 'Yes' to the last question, then answer this question: Was the want of repair of the edger a cracked or broken roller or rollers, *or rollers that were worn out of proper form by use?* Answer. Yes." The balance of the findings were to the effect (5) that the throwing of the board or plank back against the plaintiff by the edger was occasioned by the edger being out of repair as aforesaid; (6) that the board or plank complained of was not thrown back against the plaintiff by the edger through the carelessness or negligence of the man who fed the edger alone; (7) that the plaintiff had worked for the defendant six and one-half days when he was injured; (8) that the defendant hired the plaintiff to do the work of a common laborer; (9) that the foreman of the defendant ordered the plaintiff to pass lumber to the man who fed the edger; (9½) that when the plaintiff was ordered to work at the edger the agents of the defendant in charge of the mill and the

edger knew that the plaintiff was ignorant of such machinery and the dangers to which those who work upon it were exposed; (10) that at the time complained of the plaintiff had not any information or knowledge of saw-mills or edgers, or their operation, or of the dangers to which he was exposed while working at the edger, or how to avoid the injuries to which he was exposed; (11) that the plaintiff was about twenty years of age when he was injured; (12) that the plaintiff had worked at the edger, or in sight of it, one day before he was injured; (13) that the agents of the defendant in charge of the mill knew that the edger was liable on occasions to throw back with great force planks and boards that were passing through it; (14) that neither the defendant nor its agents in charge of the mill and edger in any manner informed the plaintiff that the edger was liable to or could throw back boards or planks that were passing through it, how he could avoid injuries on such occasions, or how he could know when there was danger that planks or boards would be thrown back by the edger; (15) that if the plaintiff had known, when a board or plank stopped in the edger and the feeder was trying to loosen and start the plank, that there was danger that the board or plank would be thrown backward with force by the edger, the plaintiff could have got out of the way and escaped injury; (16) that the plaintiff was not guilty of any ordinary negligence that contributed to the happening of the injury to him; (17) that, if the plaintiff has judgment, he should receive as damages $5,000.

Subsequently, the court having ordered judgment upon said special verdict in favor of the plaintiff and against the defendant, the same was entered accordingly; and from the judgment so entered the defendant appeals.

For the appellant there was a brief by *Fairchild & Fairchild*, attorneys, and *F. C. Winkler*, of counsel, and the cause was argued orally by *H. O. Fairchild* and *Mr. Winkler*.

Sherman vs. The Menominee River Lumber Co.

For the respondent there was a brief by *Huntington &
Cady*, and oral argument by *F. C. Cady*.

CASSODAY, J.    The complaint alleges two causes of ac-
tion.    The first consists in negligently providing and using
an unsafe, defective, and insecure edger, and stating wherein
the same was unsafe, defective, and insecure.    In answer to
the third question the jury found, in effect, that the edger
was at the time out of repair, so that it did not do its work
properly and safely.    By the fourth question submitted the
jury were required to find whether such "want of repair"
consisted of "a cracked or broken feed roller or rollers, *or
rollers that were worn out of proper form by use*."    To the
alternative thus presented the jury simply answered, "Yes."
The answer to the fifth question is to the effect that such
want of repair caused the board or plank to be thrown back
against the plaintiff.    From the answer to the fourth ques-
tion, it is impossible to tell whether the jury found such
roller or rollers cracked or broken, *or merely worn out of
proper form by use. Carroll v. Bohan*, 43 Wis. 218; *Jewell
v. C., St. P. & M. R. Co.* 54 Wis. 617; *Murray v. Abbot*,
61 Wis. 198.    It follows that the question submitted was
defective, and the answer indefinite and uncertain.    Be-
sides, it is strenuously claimed that if such want of repair
consisted only in such rollers getting out of proper form
by use or wear, then this finding is outside of the issues in
the case, and unsupported by the evidence.    Certainly no
such defect is alleged in the complaint.    This is conceded
by the learned trial judge in his charge.    Counsel for the
defendant boldly assert in their printed brief "that there is
not a word of proof in the case that either of the rollers
. . . were 'worn out of proper form by use' or other-
wise."    The counsel for the plaintiff fails to point out any
evidence tending to prove such fact, and we find none in
the record.

In charging the jury on the question, the learned trial judge says: "One witness said something about some of their feed rollers getting worn out of the true by use." The witness thus referred to appears to have been testifying generally as an expert, under objection, as to boards stopping in such edgers, and the cause of the same, and, among other things, to the effect that where the roller was uneven (higher at one end, or sagging in the middle,— sag in the roller) it would have a tendency to curve the board— run it on an angle rather than run it straight — and thus draw it up, or cause it to go up, to the higher side. But this evidence, on a matter not in issue, did not authorize the submission of such question nor support such finding, in the absence of any evidence tending to prove that either of such rollers was thus out of proper form by use or wear. Besides, there is no finding, and no evidence tending to prove, that the defendant or any of its agents knew that either of said rollers was thus out of proper form by use or wear. Since the jury were thus at liberty to answer the fourth question submitted as they did, without any evidence that either of said rollers was out of proper form by use or wear, it is manifest that such answer cannot be allowed to aid in supporting the judgment.

After the cause was submitted to the jury, they returned and informed the court that they did not understand the fifteenth question as it had previously been submitted, whereupon the court altered the same so as to read as when finally answered. Thereupon the jury again retired, and after awhile again returned with all the questions answered to the effect mentioned in the foregoing statement, except the thirteenth, as to which they found, in effect, "that there was no proof upon which they could base an answer to that question." Thereupon the counsel for the defendant insisted that such answer was equivalent to, and in effect, an answer in the negative, and should be received.

The court then said to the jury: "You are requested to re-tire and try to make an answer, yes or no, to that question. If you find that there is testimony in the case that satisfies you that the agents of the defendant did know — in charge of the mill — did know that the machine sometimes, on oc-casions, threw back planks or boards, that you should say 'Yes' to this question. I think there is something in Mr. Corry's testimony with respect to the dangers. I don't know. Perhaps I am mistaken, but that is my remem-brance." Whereupon the court requested the reporter to read to the jury the testimony of Michael Corry. Mr. Corry's testimony was then and there read in full by the reporter to the jury, with the exception of one page of his testimony, which the court informed the reporter he need not read. After the reading of the testimony aforesaid of Michael Corry, with the exception of the page aforesaid, the court addressed the jury as follows: "Now, gentlemen of the jury, I have had this read over to you so that you might have your memory refreshed in respect to what this one witness said, and if you find from fair preponderance of the evidence that the agents of the defendant in charge of the mill in question knew that the edger was liable on occasions to throw back with great force planks and boards that were passing through it, you will say 'Yes' to that question; but if you are not satisfied by a fair preponder-ance of the evidence that the agents knew that that liability existed, you ought to say 'No,' because the burden of proof upon this, as upon all other questions, is upon the plaintiff, and if the plaintiff has not satisfied you on that subject you ought to say 'No,' and if he has you ought to say 'Yes.' That is all I have to say about it. You can take these ques-tions along with you." The jury then retired, and shortly after returned into court with their verdict, and with the said thirteenth question answered 'Yes.'

To each of such several instructions, directions, and pro-

ceedings on the part of the court the defendant made timely objections and exceptions. Undoubtedly a trial court may, under certain circumstances, decline to receive a special verdict, and direct the jury to retire for further consultation. *Wightman v. C. & N. W. R. Co.* 73 Wis. 169. But here the finding of an absence of proof was equivalent to answering the question in the negative; and hence the verdict, when first returned, should have been received and entered. *McLimans v. Lancaster*, 63 Wis. 607, 608. But, even if this were not so, yet the reading to the jury of portions of the testimony of one witness, with the comments of the court stated, and omitting other material portions and other testimony on the same subject, under the circumstances mentioned was, as we think, misleading, and tended to the coercion of an affirmative answer from the jury, and hence was error.

It is strenuously claimed on the part of the defendant that there is no evidence to support the finding of the jury to question $9\frac{1}{2}$. Upon that question the court, among other things, charged the jury: " Now you must determine this from the evidence in the case,— from the preponderance of it; and very likely you will have to determine it from inferences drawn from the testimony in the case. . . . I don't remember any testimony at all on that subject, directly in respect to that,— that he told them anything about his acquaintance with machines or machinery; and, if you don't remember any testimony on that subject, or if there isn't any on that subject, you will have to determine it upon inferences that you may draw from what experienced men about machinery of that kind would be likely to know when they saw a man — a stranger — come around their machines. If they were able to tell right along whether he is a person that knows nothing about machines or machinery of that kind they set him to work about, why you will perhaps know about it, and if not you will have to do the best

you can with that question." These portions of the charge virtually concede that there was no evidence bearing directly upon the subject. They nevertheless authorize the jury to determine that question from inferences drawn from the testimony in the case, if there was any, and, if there was not any testimony on that subject, then that they might determine it from such inferences as they might draw from what experienced men about machinery of that kind would be likely to know when they saw a stranger come around their machines — that they themselves would perhaps know about it, and, if not, then they would have to do the best they could with that question. Every party to an action at law in this state has a right to insist upon a verdict or finding based upon the law and the evidence in the case, and not, in the absence of evidence, upon mere inference, conjecture, and personal experience. *Washburn v. M. & L. W. R. Co.* 59 Wis. 364; *Hanawalt v. State,* 64 Wis. 87; *Seefeld v. C., M. & St. P. R. Co.* 67 Wis. 96; *Sasse v. State,* 68 Wis. 537. These instructions were manifestly misleading, and hence erroneous.

The finding of the jury upon the fifteenth question submitted is based entirely upon an hypothetical state of facts which the plaintiff insists did not exist, and hence the impropriety of submitting it, or allowing it to remain as a basis of the judgment, is quite apparent. This court has frequently held that it is not the province of a special verdict to submit questions not in issue, or not controverted because admitted, as in the case at bar, but the same should be limited to material and controverted questions of fact. *Heddles v. C. & N. W. R. Co.* 74 Wis. 257, 258, and cases there cited. But, notwithstanding the submission of some questions not in issue, and others not controverted because admitted, yet the court failed to submit to the jury the most material and principally controverted question of fact in issue as to each of the two causes of action alleged, to wit,

the negligence of the defendant either in providing and using unsafe and defective machinery, or carelessly and negligently operating the same, and whether the injury in question was caused by such negligence or carelessness. A special verdict not determining all the material and controverted facts in issue is, of course, defective. *Hutchinson v. C. & N. W. R. Co.* 41 Wis. 552; *Kelley v. C., M. & St. P. R. Co.* 53 Wis. 74; *Bell v. Shafer*, 58 Wis. 223; *Kerkhof v. Atlas Paper Co.* 68 Wis. 674; *Pratt v. Peck*, 65 Wis. 471. Certainly a special verdict should be something more than a mere abstract of the evidence. *Ibid.* It is claimed that the counsel for the defendant made no objections to the questions submitted, and made no request to submit such questions of negligence, and therefore waived the same. This would undoubtedly be so where such special verdict is accompanied by a general verdict. *Kelley v. C., M. & St. P. R. Co.* 53 Wis. 74. But where a judgment is based upon a special verdict *alone*, which fails to determine all the material and controverted facts in issue, there can be no such waiver. It is unnecessary here to determine whether such negligence of the defendant may be inferred from the other findings, since there must be a new trial by reason of the other errors mentioned.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.