HERMAN B. DAVIS *vs.* JOSLIN MANUFACTURING COMPANY.

MARCH 23, 1908.

PRESENT, Douglas, C. J., Dubois, Blodgett, Johnson, and Parkhurst, JJ.

(1) *Negligence.  Duty to Child, a Trespasser, by Owner of Premises.*

At rear of defendant's millt here was a trench open and without railings along its edge; a path led from the mill across the trench, over a bridge with railings on each side of it, from the end of which bridge there was a well-defined path leading up the hill to a private roadway passing in front of a tenement house of defendant's, occupied by plaintiff. The path was used by the employees in crossing the trench to remove leaves from the flume, and for other purposes connected with the business of defendant. In the course of the path were three stone steps, but it was not shown when or by whom they were constructed. Defendant acquired the property several years before the accident, and its condition was the same then, and for a long time prior thereto, as at the time of the accident. Plaintiff had occupied the premises a year before the accident. It also appeared that it was not necessary for the employees to use this path in going to the mill, as there was another path which avoided the trench. Deceased at time of the accident was five years of age, was intelligent, and had been repeatedly warned to avoid the trench. Defendant did not require its employees to use this path except directly in the line of their employment, but it did not object to such use. Deceased, on the day of the accident, being missed by his parent, was an hour later found drowned in the trench east of where it was crossed by the bridge. There was no testimony as to how, when, or where deceased got into the trench:—

*Held*, that, so far as the deceased was concerned, there was no room for any implication of an invitation to use the path, since it appeared that he was expressly warned away by all who had any control over him.

*Held*, further, that the parents of deceased were fully advised of the danger, which was perfectly obvious, and that they recognized this danger in giving the warnings to deceased.

*Held*, further, that deceased was not even a licensee, but was a trespasser in using the path, and so subject to the rule that the owner of property owes no duty to a trespasser as to keeping his premises safe for passage.

*Held*, further, that there was no evidence to show how deceased fell into the trench, or where, nor that his death was caused by any negligence of defendant.

(2) *Views by Jury Not Probative Evidence.*

*Held*, further, that the fact that the jury viewed the premises did not affect the power of the court to deal with the case upon the evidence.

TRESPASS ON THE CASE for negligence. Heard on exceptions

of defendant, and case remitted to Superior Court with direction to enter judgment for defendant.

PARKHURST, J. This is an action of trespass on the case for negligence, brought by the plaintiff as the father and next of kin of his infant son, Emery A. Davis, on whose estate no administrator has been appointed, to recover damages under the statute for the death of said infant son by reason of the alleged negligence of the defendant corporation.

The negligence complained of in the declaration is the failure of the defendant corporation to maintain suitable railings and safeguards at and near a bridge over its trench, across which there was a path leading from its tenement houses to the public highway, one of which houses was occupied by the plaintiff and his family as a dwelling, the declaration alleging that the path was maintained by the defendant corporation for the use of the occupants of said houses, their families and children, and the public.

The declaration contains two counts, in the first of which it is claimed that the plaintiff's infant son, without negligence on his part, and while in the exercise of reasonable, due, and proper care and caution on his part, considering his age, years, and discretion, in going on foot down said path towards the public highway, as he lawfully might, fell into said trench at or near said bridge by reason of said neglect of the defendant to provide reasonable and proper railings and safeguards at and on said bridge and at and near and about said stream. The second count is similar, but alleges the child to have fallen into the stream from said bridge. The plea was the general issue.

The evidence showed that the defendant corporation was the owner of a mill and manufacturing plant at Ponegansett, in the town of Scituate, and of a considerable tract of land adjoining the same on the north and west; that at the rear of the mill ran a trench about six feet deep which supplied water to its wheel; that said trench was open and without railings along its edge; that the mill was situated on the main highway, and that a path led from the mill up to and across this trench over

a bridge with railings on each side of it, from the end of which bridge there was a well-defined and worn path leading up the hill and terminating at a private roadway passing in front of a tenement house belonging to the defendant and occupied by the plaintiff. That just west of this path and near the top of the hill was an elevated water tank, used for the purpose of fire protection for the mill; that the path was used by the employees of the mill in crossing the trench for the purpose of removing leaves and rubbish from the strainers in the flume in which the trench terminated, and also for the purpose of visiting the water tank to see its condition and, in the winter time, of turning on and off steam which was supplied to the tank for the purpose of keeping the water in the same from freezing; that the path not only led up to the tank, but also extended beyond it to a private roadway running in front of certain tenement houses belonging to the defendant corporation and used mainly by its employees, one of which houses is the one occupied by the plaintiff, some of whose family were employed in the mill; and that the upper portion of the path was also used by the defendant's employees in visiting the tank, since at times this was necessary, especially for carrying ladders to the tank in the winter season; that the land to the north of the trench was quite a steep hill, extending to the roadway in front of these tenements, and in the winter time was icy, and the path was more or less dangerous for use; that at the foot of the hill, and just before reaching the bridge, there were three somewhat rude stone steps in the pathway, but it was not shown when or by whom these steps were constructed; that the defendant corporation acquired the property several years before the accident, and, at the time it acquired it and for a long period prior thereto, the bridge, pathway, and steps had existed in the same condition as at the time of the accident and without any railing along the path or on the side of the trench at or near the bridge.

The testimony further showed that the plaintiff, with his family, came to the premises over a year before the accident, and at that time the premises were in the same condition and so continued up to the time of the accident; that this path-

way was used by many of the mill hands and their families in going to and from the mill, and also in going down from their houses to the highway in front of the mill; that this, however, was not necessary, as the highway turned to the north just beyond the mill and led up the hill, and a private roadway in front of the houses led into the highway; that there was also another path leading from the houses down the hill a little further to the west and going around the end of the trench, which a short distance to the west of the mill was covered over, and ran under certain buildings and under the highway for some distance, again opening further to the west and there extending as far as the dam; that the trench near the bridge on both sides was open, and the danger of falling into it apparent to all persons; that the plaintiff, his wife, and other adult members of his family, as well as his neighbors, recognized the danger to children if they strayed down from the houses to the vicinity of the trench, and on this account they warned their children to keep away from the trench and endeavored at all times, when they were playing in front of the houses, to have some one present to watch them; that the deceased, at the time of the accident, was a child more than five years and eight months old, bright and intelligent, and understood everything that was said to him; that he was told several times a day, by his mother, his father, and his grandfather, not to go near the trench or he would fall in and be drowned and never see his parents any more; that about a year before this accident another child fell into the trench, near the bridge; it was not, however, using the path at that time, but playing on the bank of the trench.

The superintendent of the mill, Mr. Oatley, testified that he had repeatedly driven children away from said trench, and would not permit them to go near it unless accompanied by an adult. He further testified that he had seen this child playing near the trench several times, and had driven him away and told him to keep away from the trench or he would get drowned, and had also complained to his mother, who was at work in the mill, and required her to keep the child away. The mother denied receiving this complaint, and the cross-examination of

the witness was claimed by plaintiff's counsel to show that witness might have been mistaken in his identification of the child.

With the exception of this testimony of Mr. Oatley's, the testimony is uncontradicted that the defendant corporation made no objection to its tenants and others using this path up or down the hill and across the bridge, but did not require anyone to use it except in so far as it was necessary for its employees to do so in cleaning the trench and in going to and from the tank to attend to the condition of that structure and its contents.

The mother of the child testified that, on the day of the accident, she was preparing to move away from the premises, that the deceased and his younger brother were playing just in front of the house and on the north side of the driveway; that she charged them not to go away from where they were, went across the kitchen into the bedroom, and picked up a piece of a bedstead and brought it to the doorway, where she met the younger child crawling up the steps and crying, "Emery gone;" that she saw that Emery was not there, rushed at once down the pathway to the bridge, and looked into the trench, but saw no signs of him; that she then sought for him for some time among the neighbors, and finally, about an hour later, caused the trench to be drawn down, and found the body of the child at the bottom of the trench, just east of where it was crossed by the bridge.

There was no other testimony of how, when, or where the child got into the trench.

All of this testimony, with the exception of the superintendent's testimony of driving the child away and warning the mother, was uncontradicted.

There was no testimony as to any invitation to anyone to use this path, other than to its employees in cleaning the strainers or visiting the tank, except such as the court, against the objection of the defendant, held might be inferred from the existence and plain demarcation of the path itself, the existence of the steps in the path at the foot of the hill near the bridge, and of the bridge and the railings on its sides.

For the purpose of assisting the jury to better understand the testimony, a view was taken of the premises.

At the close of the testimony the defendant requested the court to direct a verdict in its behalf.  This was denied by the court, and exception taken by the defendant.  The defendant presented certain requests to charge the jury, of which the court denied eight, to which denial the defendant duly excepted.  The jury returned a verdict for the plaintiff, assessing damages in the sum of thirteen hundred and fifty dollars ($1,350).  The defendant moved before the justice who presided at the trial for a new trial on the grounds that the verdict was against the law and the evidence and the weight thereof, was not supported by sufficient evidence, and was erroneous and should have been in favor of the defendant.  This motion was denied, and the defendant excepted to such denial, and thereupon brought these matters to the attention of this court on a bill of exceptions, and now asks that the verdict may be set aside and that judgment may be ordered entered in behalf of the defendant or a new trial granted.

We are of the opinion that the verdict of the jury is not supported by the evidence in the case.

(1)    The whole case rests upon the claim that the deceased used the path leading to and across the bridge over the trench by "invitation" of the defendant.  There is no claim of an express invitation; but the plaintiff claims that there was an implied invitation by reason of the nature of the well-defined path leading from the tenement houses to the bridge, and by reason of the further fact, which is undisputed, that adult tenants of the houses were permitted without objection to make such use of the path and bridge as they saw fit in going to and from the mill and the highway.  But, so far as the deceased child is concerned, there is no room for any implication, for it is the undisputed testimony of the plaintiff, his wife, and his father, all of whom lived in the same house, and looked after this child, that the child was warned repeatedly, day after day and several times a day, to keep away from the bridge and trench; his mother testifies that she told him "to keep away on account if he didn't he would fall in and get drowned and never see his

mama and papa any more;" that she gave him this instruction "not less than four or five times a day; I always kept right at him;" and that he was constantly watched when he was out of doors at play, either by his parents or his grandfather or by a neighbor. And the mother further testifies that on the day of the accident, and just before it occurred, she expressly warned the child to stay in front of the house and not to go away. The defendant's superintendent also testified that he warned children away from the trench and did not permit them to play there; and that he had warned this particular child to the same effect.

It is futile to claim, under these circumstances, that there was any implied invitation to this child to use the path and bridge, or to approach the trench in any way, when it clearly appears that he was expressly warned away by all who had any control over him.

The evidence plainly shows that the parents were as fully advised of the danger, which was perfectly obvious, as if the landlord had expressly warned them by its agent; and that they recognized this danger in giving the warnings which they testified to.

If the defendant, in letting the tenement house upon its premises, had fully warned the tenants and occupants of the house of the dangers of this trench, with its bridge and approaching path, to themselves and their children, it can not be doubted that the defendant would have fulfilled its entire duty under the law, and would not have been liable for any subsequent injury, unless it had caused such injury by some active intervention on its own part, as, for example, by some change in the surroundings, bringing in a new element of danger, of which the injured party was not advised. No such claim is made, for it is undisputed that the trench, bridge, and approaching paths all remained in the same condition as they had been for years prior to the plaintiff's occupation of the tenement, and prior to the defendant's purchase of the property.

The deceased child was, under these facts, not even a licensee, so far as the use of the path over the bridge and trench was concerned, but was a trespasser and so subject to the rule

that the owner of property owes no duty to a trespasser or licensee, as to keeping his premises safe for passage. *Stevens* v *Nichols*, 155 Mass. 472; *Reardon* v. *Thompson*, 149 Mass. 267; *Galligan* v. *Metacomet Mfg. Co.*, 143 Mass. 527; *Redigan* v. *B. & M. R. R. Co.*, 155 Mass. 44; *Cahill* v. *Layton*, 57 Wis. 600; *D., L. & W. R. R. Co.* v. *Reich*, 61 N. J. L. 635; *Hounsell* v. *Smyth*, 7 C. B., N. S., 731, 741; *Paolino* v. *McKendall*, 24 R. I. 432; *Vanderbeck* v. *Hendry*, 34 N. J. L. (5 Vroom) 467.

Furthermore, there is no evidence to show how the deceased child came to fall into the trench, or at what exact point, or whether he was approaching the trench by the path direct from the house, or whether he approached it at some other point, and fell in and floated or struggled to the place where the body was found. For all that appears, he may have been pushed; the facts proved do not lead to any irresistible inference that the boy fell in at the point where the body was found, or that his fall and death was in any way caused by any negligence on the part of the defendant. The mother testifies that within a minute or two after the disappearance of the child she went directly to the bridge over the trench, from which she could look almost directly down over the place where the body was found an hour later, and that she looked carefully in the water and saw nothing of the child; it is hardly conceivable that if the child was then in the water at that point she could not have seen his struggles before he was drowned. So that it might as well be inferred that the child fell or was pushed in at some other place and floated in his struggles to the place where found, as that he went down the path to the bridge and fell in there. The verdict is based upon conjecture rather than upon fact.

In *Holt* v. *Spokane, &c., Ry. Co.*, 4 Idaho, 443, it is said (p. 447): "There is nothing in the evidence showing how the child came to fall in the well. It does not show whether it was thrown in, or accidentally fell in. It appears that a playmate was with the child, and the evidence does not show but that the child was carelessly pushed into the well. This question is left wholly to speculation, inference, or conjecture. In *Sherman* v. *Lumber Co.*, 77 Wis. 22, 45 N. W. 1079, the court says:

'Every party to an action at law has a right to insist upon a verdict or finding based upon the law and the evidence in the case, and not, in the absence of the evidence, upon mere inference, conjecture or personal experience.' In *Lehman* v. *City of Brooklyn*, 29 Barb. 234—which is a case where a child was found drowned in a well, the cover of which had been left open, and it was admitted to have been negligence to leave the well open, it being situated in a public street—the court says: 'To entitle plaintiff to recover, it must appear affirmatively that the accident resulted wholly from the negligence of the defendant, and that the negligence or imprudence of the plaintiff did not contribute to the result.' If that rule be applied to the case at bar, the plaintiff has totally failed to make his case. He has failed to show negligence on the part of the defendant, and has failed to show that negligence on his part did not contribute to the death of the child."

The claim made by plaintiff's counsel that "the question of the defendant's negligence can not be fairly raised before this court, on account of the view taken by the jury," is entirely untenable. As was well said in *Redigan* v. *B. & M. R. R. Co.*, 155 Mass. 44, at p. 48: "The fact that the jury viewed the premises makes no difference in the power of the court to deal with the case upon the evidence presented in court, or with our decision of the question whether the justice presiding at the trial was right in directing a verdict for the defendant." To the same effect see also *Sasse* v. *State*, 68 Wis. 530, 537.

This court has always taken the same position as set forth above regarding the purpose and effect of a view, although we do not call to mind any reported case in this State where it has been necessary for the court to express its opinion in this matter.

Under our construction of the law applicable to this case, it was the duty of the court below to have directed the jury to return a verdict for the defendant in accordance with the defendant's motion to that effect. It is not therefore necessary to consider in detail the remaining exceptions taken by the defendant relating to the refusal of the court below to charge as requested in various particulars, since these matters all become immaterial in view of the application of the broad prin-

ciple of law relating to the relation of the defendant to the deceased child and the extent of its duty to provide for his safety.

The remarks of the court relating to the duty of parents in cases of this character, in *D., L. & W. R. R. Co.* v. *Reich*, 61 N. J. L. 635, are peculiarly applicable in this case; that court says (p. 640 *et seq*): "The suggestion contained in the line of cases first adverted to, viz., that the duty of protection is cast upon the landowner solely by reason of the inability of the child to care for its own safety, seems to me to be unsound in principle. Primarily, the duty of affording protection to the child rests upon the parent, who is responsible for its being. If the parent neglects the duty which the law casts upon him and permits his child to stray upon the land of another and there incur peril, why should the duty of protection be shifted from the negligent parent to the owner of the land? It is usually the fact, in cases of this kind, that the landowner has no knowledge that children have come upon his premises and are exposed to the danger there until after injury has actually occurred, while other persons who are passing by frequently observe the risk that is being run by childish intruders, but take no steps to bring it to an end. If the duty of protection, under such circumstances, is to be shifted from the parent to a third person, it would seem more consonant with reason to place it upon those who have knowledge of the existence of the danger and opportunity to terminate it, rather than upon the landowner, who is entirely ignorant of the entry of the children upon his premises. The mere fact that a child is unable to guard itself against peril and that its parent fails to provide for its safety does not, *ipso facto*, cast upon any third person the duty of affording it protection."

This last case was cited with approval by this court in *Paolino* v. *McKendall*, 24 R. I. 432, 435, 438.

The defendant's exceptions based upon the claim that the verdict is contrary to the evidence and the weight thereof, and contrary to the law, and that the court should have directed a verdict for the defendant, are sustained; and the case is

remitted to the Superior Court, with direction to enter judgment for the defendant.

*Albert B. Crafts and Amasa M. Eaton,* for plaintiff.
*Barney & Lee,* for defendant.